March 27, 2004   04 MAR 31 AM 9: 30

**ATTN: (OST-04-001-NG) Amended**
U.S. Department of Transportation
Office of the Secretary (OST)
Human Resources Operations, M-16
400 Seventh Street, SW – Room 2225
Washington, DC 20590

Dear Madam or Sir:

This is to apply for the position of Director, Office of Economic and Strategic Analysis, Es-301 in the Office of the Secretary, Office of the Assistant Secretary for Transportation Policy recently advertised at www.jobsearch.usajobs.opm.gov. Enclosed are a resume and Qualifications Statement for your review.

I could bring superior and creative expertise coupled with a diversified background in economics and law to this position. I am committed to sound public policy development as is demonstrated by my long history of public service. I am dedicated to the principles of democracy, the fundamental foundation of our nation. My verbal and advocacy skills, enhanced by prior experience in teaching in higher education, litigation and public service are perfect for this position as well as my long-term professional goals.

I would love a personal interview in order to discuss in detail the attributes I could bring to this position in the Office of the Secretary for the United States Department of Transportation at a critical time in our history. Please call me at your earliest convenience.

Sincerely,

*Connie Reshard*

Connie Reshard

Enclosures

Connie Cornelia Reshard
Social Security No. 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
United States Citizen
Highest Grade: GM-14
1435 Fourth Street, S.W.
P.O. Box 70510
Washington, D.C. 20024
(202) 554-9222
(202) 554-7471 (Fax)
creshard@conniereshard.com

**POSITION:**  Director, Office of Economics and Strategic Analysis
OST-04-001-NG (Amended)

**EMPLOYMENT HISTORY:**

**ATTORNEY:**   Private Practice: 1988 - Present

⇒ *Senior Contract Attorney*: Hart-Scott-Rodino Pre-Merger notification/Litigation *1997-2004*

Mergers include but not limited to Lockheed Martin/Northrup Grumman, General Mills/Pillsbury, Diaego/Seagrams, COMSAT/Lockheed Martin, Allied Signal/Honeywell, GE/Honeywell, Lockheed Martin/TRW, Fox/Hughes Electronics, Aspen Tech, Yellow Trucking, Caremark/Advanced PCS, Binion (Horseshoe Casinos)/Harrahs, *et al.*

*Document Production for Second Request both Department of Justice and the Federal Trade Commission:* Reviewed documents (hard copy and online (Concordia, Applied Discovery, Merrill, Lextranet, etc.)) for relevance, for significance and for attorney-client privilege exclusion. I was a member of final review team responsible for determining if documents could be withheld under privilege exclusion for several mergers. I was also a member of second review team for quality control on most projects. Drafted and edited privilege log and significant documents log.

⇒ *Microsoft Antitrust Litigation:* Reviewed all orders in the Microsoft litigation including findings of facts in the Department of Justice antitrust case against Microsoft. In consumer and OEM class action litigation for plaintiffs' side, reviewed documents for significance under issues of the case. Reviewed and organized documents by issue for ongoing litigation. Reviewed and annotated deposition transcripts in preparation for pretrial motions (summary judgment motions) and in preparation for trial. Review of transcripts involved the substantive issues of the case, impeachment testimony and all aspects of trial preparation. Litigation conducted by several law firms. Received memorandum containing special commendation on the substantive quality of my work. As a result of the superior quality of my work, I was assigned to annotate the most significant transcripts including Microsoft's' CEO. June 2002 to October 2003. (Consortium of Law Firms/Cummings, Cummings & Dudenhefer, New Orleans, LA)

⇒ *Other Litigation:* Medical Litigation – Manages a group of 10 lawyers regarding the production of documents, assessment of relevance, attorney-client privilege and significance re legal issues in the case. (February 2004 – Present). **Tobacco litigation** – Member of special team that reviewed documents for relevance. (November 2001-January 2002. **Antitrust (Unfair Competition)** – Reviewed documents in preparation for depositions and pretrial motions regarding access to telephone lines for DSL. (January 2000 – April 2000). **Criminal Subpoena (Price Fixing)** – Reviewed documents for relevance, attorney-client privilege and significance regarding government subpoena. (April 1999 – September 1999)

⇒ Government Contracts: Negotiated and managed contracts - economic, transportation, and environmental issues; supervised several economist and prepared final edit of reports. (1991-1992)

⇒ Business Acquisitions: Financial and regulatory analyses for investment clients: 1988 - Present. e.g., Georgetown Partners.

⇒ Litigation:

  ⇒ Managed complex civil litigation from trial stage through appellate level in Federal Courts including the United States Supreme Court. Superior skills in assessing antitrust issues. Expert knowledge in transportation; international law, employment law, antitrust law and business law, 1988 – Present.

  ⇒ Conducted pretrial and discovery matters – drafted pleadings, interrogatories, and production of document requests in federal civil litigation. Work included: Analysis of documents, annotation of transcripts and preparation of witness for deposition and trial. 1985 – Present.

⇒ Other: Applications for trucking license from U.S. Department of Transportation; international aviation policy assessment; business/marketing plans for small to medium sized companies—both new and established; and Section 8 certification for minority businesses.

⇒ Organized tenants association including drafting of articles of incorporation at the Town Center Apartments located at 1101 and 1001 Third Street, SW, approximately 250 units. Member of Board of Directors. Negotiated with the landlord (Bresler and Reiner) and obtained improvement in services including the provision of air conditioning and general maintenance. (1999-March 2003).

⇒ Own and operate legal and economics services through Legal and Economics Consulting, 1997-Present. Prepares business plans and other consulting services for start-up businesses, e.g., Synaptrix Knowledge Utilities.

**MEMBER:** Pennsylvania Bar; U.S. District Court for the Southern District of Pennsylvania; and Other Federal Courts by Motion for Pro Hac Vice

**ECONOMIST:** Office of the Secretary of the U.S. Department of Transportation, Washington, D.C., 1977 - 1988. Began as GS-0110-11, promoted to 12 (1978), promoted to GM-0110-13 (1979) and promoted to GM-0110-14 (1982).

⇒ Provided economic analysis regarding various airline merger cases, airline pricing and the competitive marketing case.

⇒ Wrote extensive analysis of the impact of immigration inspection and customs' preclearance of passengers in Shannon, Ireland on such services in Bangor, Maine. Study accepted by international community and then-Senators Mitchell and Cohen, despite their earlier protestations to such inspections and preclearance abroad, 1987 - 88.

⇒ Reviewed and advised principals regarding pending legislation governing major United States policy changes for international trade, 1987 - 88.

⇒ Wrote and participated in the administration of regulations that authorized the buying and selling of take-off and landing rights at National, La Guardia, JFK and O'Hare Airports, 1986.

⇒ Provided legal analysis for new trucking legislation - Federal preemption and commerce clause doctrine -- analyses prepared for and used by the Secretary at Congressional hearings, 1985 - 86.

⇒ Researched and participated in administrative proceedings before the ICC, regarding the definition of interstate commerce for trucking—my research uncovered loop hole that led to the enlargement of interstate commerce and a measure of deregulation to portions of interstate trips within a state, previously excluded as intrastate commerce, 1985 - 86.

⇒ Wrote official legal interpretation of aviation treaties between the United States and Japan in 1985 at critical stage in trade relations. Successfully interpreted a complex series of treaties, memoranda of consultations and memoranda of understandings between the United States and Japan from post World War II despite interagency disputes regarding the interpretations. The United States Department of Transportation adopted my interpretations that were given to the Government of Japan through diplomatic channel. Input lead to successful new amendments to treaty that paved the way for extended services by Continental Airlines and Air Micronesia as well as enhanced United States and Japan bilateral relations overall.

⇒ Wrote administrative law guide regarding the selection of airlines for international routes for the Assistant Secretary in 1984. Attorneys used the to prepare administrative decisions. Federal law transferred the function to the Secretary of Transportation in 1985.

⇒ Performed and managed economic and policy studies including antitrust issues. Analyzed economic regulations and made public policy recommendations based on economic analyses to principals of the Department.

⇒ Reviewed and wrote recommendations to the President regarding aviation administrative decisions, 1978 - 85.

⇒ Prepared a presentation and chart for the Deputy Secretary that explained United States aviation policy and the types of treaties between the United States and its major bilateral partners. The Deputy Secretary signed the Department of Transportation's letter to the Department of State outlining DOT's position and recommendations for bilateral and multilateral negations with foreign countries.

⇒ Member of International Civil Aviation Organization Panel of Experts on Air Navigation Route Facility Economics, 1983.

⇒ Member of President Carter's Reorganization of Trade Policy Team, 1977–78. Work led to enactment of major trade 1979 Trade act.

⇒ Member of United States negotiating team for multilateral discussions with ECAC's 18-member states involving the setting of air fares between the United States and Europe beginning in 1982. These negotiations led to the first multilateral treaty that allowed airlines from all participating countries to set their own fares within a permissible zone of flexibility. Worked directly with my counterparts at the Department of State and the then-Civil Aeronautics Board to provide analyses for the principals.

⇒ Assisted in the preparation of testimony for Congressional oversight hearings and other matters.

⇒ Prepared correspondence for various matters and prepared briefing matters for the Secretary, Deputy Secretary and Assistant Secretary.

⇒ Assisted in the preparation of filings for administrative proceedings before the Civil Aeronautics Board, ICC and other matters.

⇒ Maintained contact with law firms, presidents/vice presidents of airlines and other organizations. Received letter of commendation from a law firm as a result of my explanation of the complex bilateral aviation relation with Japan in 1985 during a critical phase in our trade relationship.

⇒ Negotiated, interpreted, and drafted aviation treaties, e.g., Japan, Germany, United Kingdom, China, Canada, France, Korea, Australia, Argentina, Thailand, Malaysia, Singapore, India.

Preparation work and analyses of the aviation market and overall bilateral relations led to successful negotiations for expanded rights and operating conditions for United States airlines. For example, at a critical stage in the negotiations with Malaysia in 1984, I correctly evaluated the issues and developed a compromise regarding charges for airway services at United States Airports that led to the successful conclusion of the treaty. Received commendation from the United States Department of State for my contribution to the success of the negotiations that were necessary to advance other agenda items between the two countries. - 1978 – 85.

**Assistant Professor:** Florida A & M University, School of Business and Industry, Tallahassee, Florida, 1971 - 77.

⇒ Taught price theory, macroeconomics, history of economic thought and consumer economics: began as a Lecturer and promoted to Assistant Professor in 1974.

⇒ Designed consumer-oriented workshops and hosted consumer weekly radio show.

⇒ Designated top faculty member by class of 1977/led that class during commencement proceedings.

⇒ Active participant in various organizations including member of the advisory committee to the local School Board, member of the advisory panel to the U.S. Small Business Administration, member of the Board of Directors for the Tallahassee Urban League and many other organizations.

**Lecturer:** Economics at Nassau Community College, Garden City, New York (1971)
Howard University, Washington, DC (1978-82)

## EDUCATION:

Georgetown University Law Center, Washington, D.C., J.D., May 27, 1985.

City University of New York (Brooklyn College), New York, New York, M.A., Economics, February 1972.
Teaching Assistant for Economics 101 and 102/graded money and banking exam papers/taught statistics (1969-1971)

Florida A & M University, Tallahassee, Florida, B.A., Economics, August 1969.

Lincoln High School, Tallahassee, Florida, Diploma/College Preparatory, June 1965.

Graduate Work Beyond M. A. in Economics, Florida State University, George Washington University, and Massachusetts Institute of Technology, approximately 25 semester credits, 1974 - 81. (e.g., econometrics, operations research, international trade, transportation demand modeling)

## PAPERS:

"Application Of The Potential Competition Doctrine To Geographic Market Extension Bank Mergers," 1985.

"Setting Air Fares For Service Between Europe And The United States," Before the American Economics Association, December 1981.

"The Role Of A Central Bank In A Less Developed Economy," Master Thesis, 1971.

**COMPUTER SKILLS:**

Superior Computer skills include MS Word, MS Excel, MS Powerpoint, MS Access, WordPerfect, Lextranet, Concordance, Lexis, West Law, Lois Law, Virsus Law, Applied Discovery, EDGAR. Also, knowledge of Fortran and APL computer languages. Economics applications include regression and other statistical and quantitative analyses.

**REFERENCES ARE AVAILABLE UPON REQUEST**

# QUALIFICATIONS BRIEF

CONNIE CORNELIA RESHARD
Social Security No. 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
ANNOUNCEMENT NO.:   OST-04-001-NG
POSITION TITLE:   DIRECTOR, OFFICE OF ECONOMIC AND STRATEGIC ANALYSIS
OFFICE OF THE SECRETARY, US DEPARTMENT OF TRANSPORTATION
OFFICE OF THE ASSISTANT XECRTARY FOR TRANSPORTATION
POLICY WASHINGTON, DC

A.   **MANAGERIAL REQUIREMENTS**

**LEADING CHANGE:**

Ordinarily economists are often viewed as one-dimensional professionals, who are devoted to abstract rather than practical analyses. I, however, would bring a diversified background and expertise comprised of practical application of law and economics to this position. The value of the combined skills proved beneficial to me as an economist for the Office of the Secretary, Office of the Assisted Secretary for Transportation Policy and International Affairs.

For example, this diversified background in law and economics were instrumental in resolving a public policy issue regarding U.S. Customs pre-clearance and Immigration and Naturalization Services pre-inspection of airline passengers on certain flights from Shannon, Ireland en route to the United States. In 1987, there was a pilot pre-inspection program of airline passengers in Shannon that would be efficient, save passenger time upon arrival in the United States and preserve the integrity of the INS inspection process. Because of its strategic location to the North, Bangor, Maine is often the first entry point of certain flights from Europe. Airport authorities in Maine were concerned that these flights would now bypass Bangor, depriving it of a large segment of services for immigration inspection and customs clearance. The Maine Congressional delegation, especially Senators Mitchell and Cohen threaten to terminate funding for the pilot program and other measures.

My responsibility was to conduct on short notice a study to assess the economic impact. Immediately, I used my contacts with airlines to determine the decision process they used to make route patterns and their intentions for future service from Europe via Bangor. I also established a trusting relationship with airport officials at Bangor. As a result, Bangor officials gave me critical internal information that formed the basis for my justification that a public policy of pre-inspection would not adversely diminish flights from Europe via Bangor. My study received acceptance not only by Senators Mitchell and Cohen, but by the aviation community as well.

**LEADING PEOPLE:**

As an economist in the Office of the Assisted Secretary for Policy and International Affairs, I handled various procurement contracts for economic analysis that would be used in shaping public policy. One such contract involved a detailed study of cost analyses for airport and airway user charges. The study was being performed by Massachusetts Institute of Technology. When the project work deviated from

the scope of the statement of work, I arranged meetings with the professor at MIT about the issue. I coordinated with our Office of Procurement in order to make sure payments to MIT would stop during this phase of the negotiations. I successfully redirected the work on the project.

As an attorney involved in litigation and second request by the Federal Trade Commission and the Department of Justice for mergers and acquisitions, I may manage several other lawyers. This can be quite a challenge with 8-10 other attorneys with independent views. I am able to direct their work expeditiously, eliminate personality conflicts between them and advise them on a course of legal analyses in order to complete the tasks.

## RESULTS DRIVEN:

As an economist in the Office of the Assistant Secretary for Transportation Policy and International Affairs, I devoted the time and resources to succeed.

My resume may not be clear on the point, but I attended law school in the evening program at Georgetown University Law Center between 1981 and 1985 while maintaining a full workload at the United States Department of Transportation. During my first year of law school at the critical annual exam time in the spring, the United States Government led by the Deputy Secretary of Transportation began intense negotiations with European Civil Aviation Conference (ECAC) regarding a multilateral pricing agreement between the United States and the 18-member ECAC. My responsibility as the lead staff level person was to provide analyses for negotiation of fares for each participating country, attend the negotiations and attend to other administrative and social events during the meetings that ran straight through the weekend to Sunday. Not only did I perform all of the functions successfully, but I attended my law classes as well. My contribution was so vital, I was called at home on Sunday to participate in the conclusion of the talks. The treaty signed that day was the first multilateral agreement on pricing that translated to an operational level. My annual law exams began the following Tuesday. I completed both successfully.

Another situation arose during the negotiations with Malaysia in 1985. I successfully prepared briefing materials for the airline representatives and the United States delegation. During the negotiations, the talks were about to collapse. At this critical point, I correctly assessed the situation and advised our delegation chairperson from the Department of State that specific language regarding unfair competition involving pricing and airport/airway charges could be reworded in order to make the agreement acceptable to the Government of Malaysia. My modification of the treaty language led to a successful agreement with Malaysia, the advancement of aviation services between our two countries and the advancement of foreign policy goals for the United States. The Department of State Assistant Secretary wrote a letter to his counterpart at the Department of Transportation thanking all members of the delegation and singling me out as having made a significant contribution in the success at a critical time in negotiations.

## BUSINESS ACUMEN:

I was the designated expert on aviation fares at the Department because I provided keen analyses of economic data. My analyses were routinely used in the preparation of negotiations for airline treaties,



in the development of transportation policy and for varied use in the resolution of disputes with foreign governments.

I organized a tenants association including drafting the articles of incorporation at the Town Center Apartments located at 1101 and 1001 Third Street, SW, approximately 250 units. I was a founding member of the Board of Directors. I negotiated with the landlord (Bresler and Reiner) and obtained improvement in services including the provision of air conditioning and general maintenance. (1999-March 2003).

I own and operate legal and economics services through Legal and Economics Consulting, 1997-Present. I prepare business plans and other consulting services for start-up businesses, *e.g.*, Synaptrix Knowledge Utilities (neural technology). This is a cutting edge business involving millions of dollars.

## BUILDING COALITIONS/COMMUNICATIONS:

I represented the Department of Transportation in interagency meeting regarding the official interpretation of a series of treaties with Japan. I was responsible for writing the initial draft. After representatives from some agencies challenged the accuracy of the legal interpretation, the Department of State supported my analyses. Therefore, I wrote the official legal interpretation of aviation treaties between the United States and Japan in 1985 at a critical stage in trade relations. I successfully interpreted a complex series of treaties, memoranda of consultations and memoranda of understandings between the United States and Japan from post World War II despite interagency disputes regarding the interpretations. The United States Department of State approved the transmission of the paper as I wrote it and an official at DOT delivered it to the Government of Japan through diplomatic channel. My keen assessment lead to the successful negotiation of new amendments to the treaty that paved the way for extended services by Continental Airlines and Air Micronesia as well as enhanced United States and Japan bilateral relations overall.



I maintained contact with law firms, presidents/vice presidents of airlines and other organizations in order to effectively complete my assessment of economic regulations and the impact on transportation public policy. One law firm wrote a letter of commendation praising my explanation of the complex bilateral aviation relation with Japan in 1985 during a critical phase in our trade relationship. He noted that it was rewarding to know that he lived in a country where he could obtain this information freely from his government.

B.    **TECHNICAL REQUIREMENTS**

As a trained economist, I bring over thirty years of practical applied expertise in higher education, in government service and in the private sector. I successfully evaluated procurement contracts with Massachusetts Institute of Technology. My work led to a quality product that was used in developing public policy regarding anti-competitive behavior by foreign airlines and their governments in the area of airport and airway user charges.

Researched and participated in administrative proceedings before the ICC, regarding the definition of interstate commerce for trucking—my research uncovered a loop hole that led to the enlargement of



interstate commerce and a measure of deregulation to portions of interstate trips that occurred within a state without legislation, previously excluded as intrastate commerce, 1985 - 86.

I participated in the negotiation, interpretation, and drafting of aviation treaties, e.g., Japan, Germany, United Kingdom, China, Canada, France, Korea, Australia, Argentina, Thailand, Malaysia, Singapore, India. I prepared economic analyses and strategy of the aviation market and overall bilateral relations that led to successful negotiations for expanded rights and operating conditions for United States airlines. For example, at a critical stage in the negotiations with Malaysia in 1984, I correctly evaluated the issues and developed a compromise regarding anticompetitive issues language in the treaty that led to the successful conclusion of the treaty. I received a commendation from the United States Department of State for my contribution to the success of the negotiations that were necessary to advance other agenda items between the two countries.

I regularly attended interagency meetings with the Civil Aeronautics Board, the Office of the Special Trade Representative, the Department of Commerce, the Immigration and Naturalization Service, and the Department of State regarding the development of aviation policy and the advancement of the Department of Transportation policy positions on various issues. 1978 – 85.

I prepared extensive research on short notice involving the impact of pre-inspection of airline passengers in Shannon, Ireland on flights from Europe to Bangor, Maine. The aviation community and Congress accepted my economic analyses of transportation issues and public policy recommendations affecting transportation policy.

I provided legal analysis for new trucking legislation including analysis of federal preemption and commerce clause doctrine. These analyses were used in the development of new trucking legislation submitted to Congress. I prepared analyses for the Secretary for her Congressional testimony, 1985 - 86.

I prepared economic analysis and public policy impact regarding the Montreal Protocol that would have raised the limit of damages above the levels approved under the Warsaw Convention. However the issue was not ripe in the eyes of Congress at that time. The Senate did not ratify the Montreal Protocol.

Reviewed all orders in the Microsoft litigation including findings of facts in the Department of Justice antitrust case against Microsoft. In consumer and OEM class action litigation for plaintiffs' side, reviewed documents for significance under issues of the case. I reviewed and organized documents by issue for ongoing litigation. Reviewed and annotated deposition transcripts in preparation for pretrial motions (summary judgment motions) and in preparation for trial. Review of transcripts involved the substantive issues of the case, impeachment testimony and all aspects of trial preparation. My economics expertise set me apart from other lawyers that were reflected in my annotations and recommendations. Received memorandum containing special commendation on the substantive quality of my work. As a result of the superior quality of my work, I was assigned to annotate the most significant transcripts including Microsoft's' CEO.

I am prepared for the new century by being innovative and creative within the new technological age. I am well versed in computer software and hardware at an intimate level. In creating business plans, I assess the requirements of computer systems and security.

My long history and love for my country underscore a commitment to sound public policy during the current time of foreign threats against our country. It is imperative to not only understand the dynamics of the security issues involved, but to correctly assess their impact on transportation policy and the economic impact on public policy development.