UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONNIE C. RESHARD,

    Plaintiff,

Versus                                                          Civil Case No. 06cv1136
                                                                RBW

THE HONORABLE MARY E. PETERS,
SECRETARY OF TRANSPORTATION,
UNITED STATES DEPARTMENT OF
TRANSPORTATION

    Defendant.

_____/

## PLAINTIFF'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1.    On December 12, 2007, Judge Reggie B. Walton held a status hearing in *Reshard v. Peters*, Civil No. 87-2794 (Hereinafter "Reshard I").[1] *Reshard I* is a related case to *Reshard v. Peters*, Civil No. 06-1136 (Hereinafter "Reshard II"). Plaintiff initially filed this case separately, among other reasons, in an effort to divest the case from the late Judge John Garrett Penn. Plaintiff urges Judge Walton to consolidate the two cases as this case represents a continuing pattern of racial discrimination and retaliation that began

---

[1]    *Reshard I* is a related case to *Reshard v. Peters*, Civil No. 06-1136 (Hereinafter "Reshard II"). As a result of modifications in case law by the Supreme Court of the United States and the United States Court of Appeals for the District of Columbia Circuit, Judge Walton asked the parties to supplement all pleadings involving pending motions for summary judgment in both cases and to supplement the pleadings to plaintiff's motion for reconsideration of then-Senior District Court Judge John Garrett Penn Order denying plaintiff's Motion for Summary Judgment and granting in part defendant's Motion for Partial Summary Judgment in *Reshard I*. The Minute Order in *Reshard I* directed plaintiff to file her pleadings in this regard by January 8, 2008 and for the defendant to file its pleadings by March 7, 2008. Plaintiff Connie Reshard filed two unopposed motions stating that the parties in *Reshard I* agreed to modify the response dates for the plaintiff from January 8, 2008 to February 25, 2008 and for the defendant from March 7, 2008 to March 25, 2008. That second motion is pending before Judge Walton in *Reshard I*.

in *Reshard I*. Under Rule 15, Fed. R. Civ. P., subsequent conduct flowing from the same set of facts would relate back to the original complaint filed in *Reshard I*. Plaintiff is also filing a notice that contains the supplement filed in *Reshard I*.

2.      On January 12, 2007, the defendant filed a motion for summary judgment. Plaintiff files this supplement to her response in opposition and urges the Court to deny defendant's motion for summary judgment because the defendant fails to show that there are no genuine issues of fact or as a matter of law that the plaintiff is not entitled to relief. Plaintiff made a *prima facie* case in the initial pleading. All plaintiff has to do is show the existence of one genuine issue of fact in order to defeat the motion. The Federal Rules of Civil Procedure favor a determination of the issues on the merits. ***EMPHASIS ADDED. JUDICIAL NOTICE.* The Court should also consider the lack of discovery in this case as well as the fact that the defendant government has custodial control over all of the records and personnel involved in addition to the total control over the administrative inquiry without the benefit of the provisions of the Federal Rules of Civil Procedure. EMPHASIS ADDED.**

<u>Points And Authorities</u>

2.      The Court is required to accept Plaintiff's statements as true. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 9993 (1962); see also, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *see also, Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1293 (D.C. Cir. 1988); Wright, Miller & Kane, *Federal Practice and Procedure*, § 2716. The Complaint contains a *prima facie* case on all issues presented. The Supreme Court of the United States makes it clear that a discrimination complaint is sufficient if it contains a short and plain statement of the claim showing that the pleader is entitled to relief under the framework set forth in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

3.   Plaintiff meets the requirements set forth in *McDonnell Douglas* as follows: plaintiff is a member of a protected class (race, age and sex as well as retaliation), plaintiff applied for and is qualified for a director position with the agency (first with the Office of the Secretary of the United States Department of Transportation (Hereinafter "agency") and then with the Federal Aviation Administration (Hereinafter "FAA") and despite plaintiff's qualification, she was denied the position. Plaintiff submitted an application for the FAA's Director of International Aviation Office on May 06, 2004. Complaint at Para. No. 4. The FAA acknowledged plaintiff's application on May 10, 2004 but subsequently put the position put on hold indefinitely. Despite being qualified for both positions, plaintiff was rejected. The agency filled the director position with John Wells, at some point after plaintiff complained to the agency about the pattern of retaliation in *Reshard I* in November 2004.

4.   Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to show that it rejected plaintiff for legitimate nondiscriminatory reasons. *Id.* Prior to discover, plaintiff only needs to show a *prima facie* case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506.

5.   The defendant, on mere assertion that there is no pretext, cannot set aside the facts set forth in the Complaint and the retaliation connection to *Reshard I*. A summary judgment motion must show the defendant is entitled to a judgment as a matter of law and that the pleadings, depositions, answers to interrogatories, admissions and affidavits developed from discovery show that there is no genuine issue as to any material fact. *Anderson v. Liberty Lobby, Inc* 477 U.S. 242, 247, 249 (1986). Here the Court has not given plaintiff the opportunity to conduct any discovery and as a result a summary judgment motion is premature. There are genuine issues of material facts in dispute in this case that cannot be decided without further fact-finding. *Infra.*

6.     In reviewing a motion for summary judgment, all inferences must be viewed in a light most favorable to the plaintiff and all reasonable inferences must be in favor of the plaintiff. *Shekoyan v. Sibley Int'l.*, 409 F.3d 414, 422-23 (D.C. Cir. 2005); *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).  Since there has been no discovery, the Court only has the pleadings and must interpret the pleadings in a light most favorable to the plaintiff.  This motion for summary judgment is premature. The Defendant must show that there are no genuine issues of fact in dispute.  Plaintiff asserts that the defendant's motion does not show that its actions are undisputed legitimate, nondiscriminatory and non-retaliatory actions.  *Anderson v. Liberty Lobby, Inc* at 247, 249.  The defendant has not met the burden of proof, as there are genuine issues of fact yet to be decided after plaintiff is permitted to conduct full and complete discovery.  In this regard, plaintiff may offer other flaws in the employer's explanation other than comparisons with the candidate selected for the position.  *Holcomb v. Powell*, 433 F.3d 889, 990-991 (D.C. Cir 2006).  Not only did the agency misstate plaintiff's qualifications, it overstated Mr. Wells' qualifications as more than a supervisor over the collection of data, not the application and analyses of that data to public policy development and regulatory analyses.  *Infra* at Paragraph Nos. 9-15.

6.     The Supreme Court of the United States describes the function of the trial judge as confined to a determination of whether a genuine issue of fact exists, not to weigh the evidence. *Anderson v. Liberty Lobby, Inc* at 249.  Plaintiff clearly as set forth herein has established the existence of genuine issues of material fact relating to the issue of direct and disparate discrimination by race and sex and by retaliation.  The District of Columbia Circuit recently held that a cause of action may occur without a separate discrimination claim, holding that a dramatic reduction in job responsibilities may constitute adverse action permitting a retaliation claim.  *Holcomb v. Powell*, 433 F.3d 889 (D.C. cir. 2006). Here the defendant did not address the retaliation issue.  What did the personnel office of

the Office of the Secretary tell other prospective employers about plaintiff regarding issues of her potential employment with these third party employers during, for example, the period from January 4, 1988 until the present? What are the policies and procedures, both formal and informal regarding how this information is developed and disseminated within the personnel department as well as with and among senior department officials who surely have to track EEO complaints and litigation within the agency? Surely information regarding EEO activity is a part of the personnel process. Defendant fails to disclose that plaintiff's prior position in government was or was not accessed as a routine part of the process. Plaintiff must have access to federal court discovery in order to apply discovery instruments to such issues, including electronic discovery.

7. Plaintiff has never had a permanent job with a third party employer since her alleged termination from the agency in 1988, despite applying for thousands of jobs. Complaint at Para No. 4. This is a genuine issue of fact regarding retaliation. What did Nancy Gauthier and others in the personnel office know and when? Something happened other than what the defendant, the personnel staff, EEO office staff and the members of the panel are claiming to have happened. The plaintiff worked closely with agency Under Secretary, Jeffrey Shane from about 1979 to 1987, first as the Assistant General Counsel for International Law, second as Deputy Assistant Secretary for Transportation and International Policy and third as Department of State, Deputy Assistant Secretary. Mr. Shane was the approving officer and we are to believe that he had no knowledge of the small pool of 7 applicants for such a high level position, plaintiff and six white males, irrespective of the so called most qualified short list that was said to have excluded the plaintiff. The Court should note that the position in issue was amended several times apparently in order to obtain a larger of pool of applicants after plaintiff applied for the

position. We need to know when each applicant actually applied at each of the amendment stages of the announcement as well as whether the agency asked certain applicants to apply and when.

8.   Title VII of the Civil Rights Act of 1964 as amended prohibits employment discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. §2000e-2(a). It also prohibits retaliation and discrimination against an employee or applicant, who has made a charge, testified, assisted, or participated in a proceeding or investigation. 42 U.S.C. §2000e-3(a). Plaintiff complained of discrimination and retaliation in *Reshard I* and filed both administrative complaints and a lawsuit. Plaintiff was fired and the defendant has taken systematic steps to prevent her being employed in the federal service and generally. Plaintiff applied for two positions with the defendant. She was denied a position under a protected right and under the anti-discriminatory provision. The second position was removed from the pool of position in order to prevent plaintiff from making a claim of discrimination under Title VII.

9.   As a matter of law, the Supreme Court of the United States recently explained more fully the elements of discrimination law that are relevant in this case. *See Ledbetter v. The Goodyear Tire & rubber Company, Inc.*, 550 U.S. ____ (2007) (Sl. Op at __); *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. ___ (2006). In *Burlington*, the Supreme Court broadly defined the anti-retaliation provisions (42 U.S.C. §2000e-3(a)). The anti-retaliation provision does not confine the actions and injury to those that are related to employment or occur at the workplace. *Id.* The *Burlington* case explains the kind of the level of materiality required to support a charge of

discrimination. *Id,* No. 05-0549, Sl. Op. at 12-15. Clearly, the issues presented in this case fall within the protected class of retaliation actions contemplated by Justice Alito.

> We agree with the formulation set forth by the Seventh and the District of Columbia Circuits. In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " Rochon, 438 F. 3d, at 1219 (quoting Washington, 420 F. 3d, at 662). Sl. Op. at 13.

In fact anti-retaliation provision may exist even if the underlying charge of discrimination does not survive. *Id.*; *see also, Holcomb v. Powell,* 433 F.3d 889. Here plaintiff alleges in *Reshard II* that the defendant's actions regarding the two positions in issue were retaliatory actions against the plaintiff. Plaintiff alleges here and in *Reshard I* that the defendant has as a result of her charges of racial discrimination in *Reshard I* actively took steps to prevent the plaintiff from becoming gainfully employed in the federal service or successful in her professional and personal lives generally. Because plaintiff has not been able to obtain steady employment and some periods of time no employment, plaintiff is harmed in her effort to support herself and family, to achieve career goals and to financially and emotionally prosecute her claims. A past allegation of racial discrimination and retaliation is relevant to *Reshard II* because it relates to an ongoing charge of discrimination and retaliation in *Reshard I*. *Ledbetter v. The Goodyear Tire & Rubber Co.,* 550 U.S. ___. The *Ledbetter* court also noted that the issue of evidence regarding intent is usually circumstantial and often not necessarily reflected in written statements that are generated during the process of employment issues, but subtle actions of intent regarding their management and employment activities and decisions. Plaintiff certainly should be given the opportunity to present her case by conducting full and complete discovery.

10.   An act of discrimination can be both independent and discreet and related to prior acts. *Id.* at 7. "[a] freestanding violation may always be charged within its own charging period regardless of its connection to other violations. We repeated this same point more recently in *Morgan*: "The existence of past acts and the employee's prior knowledge of their occurrence...does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. "  536 U.S. 101, 113 (2002)" *Id.* Here the defendant constructively fired plaintiff in *Reshard I* by banning her from the facilities and processing papers that were never authorized by the late Assistant Secretary Matthew Scocozza because is signature was of the nature of approval not ministerial in nature.. Further, some of the harmful acts undertaken by the defendant against plaintiff would appear to be discreet but yet still based upon retaliation for the filing of the claims in *Reshard I*.   While a disparate treatment hostile work environment claim may be comprised of a series of acts some of which individually would not comprise an unlawful practice, it would not appear to require that plaintiff would be required to file a separate administrative complaint for each discreet unlawful acts by the defendant. *See Ledbetter v. The Goodyear Tire & Rubber Co.*, 550 U.S. ___ , Sl. Op. at 8. On the basis of the information presented, the summary judgment should be denied.

**Genuine Issue of Facts**

7.   The announcement referred to in Paragraph No. 2 of Defendant's statement of facts does not require that the applicant has **current activity** in conducting economic evaluations of significant regulations affecting transportation or any of the other listed functions of the position, Chief Economic Advisor. Dkt. No. 6, Exht. 7, pp. 1-6, 1/12/2007.   Neither does the application maintain that the field of economics has

changed so drastically that plaintiff's expertise as an economist is no longer pertinent and because it has been diminished by an allegation that it was not current. Furthermore, plaintiff's economic skills combined with her legal skills are superior regarding the support of economic analysis to economic regulation in the transportation industry. It is a well-known fact that lawyers always direct economist and advise economist on the effective application of economic analyses in the field of economic regulation. Plaintiff's ability to conduct econometrics as well as other sophisticated economic analyses together with her legal training and experience could only enhance her performance in the position as Director of Economic and Strategic Analysis. Plaintiff regularly reviews economic analyses of antitrust issues including merger and acquisitions under the Hart-Scott-Rodino Antitrust Improvement Act of 1976 covering a variety of industries including financial, transportation, pharmaceuticals, military aerospace, oil and gas.

8. Defendant's assertion in Paragraph No. 3 that the announcement described the managerial and technical requirements of the position fails to support the contention that it described how those requirements could be fulfilled, i.e., there is no mention that only current economic experience or that experience must be cutting edge as to suggest that some how the requirements had evolved over the last 20 years in order to be valuable or that the sheer volume is the only criteria representative of the quality and depth of an applicant's level of expertise as an economist. There is no assertion that current experience would enhance an applicant's ability to perform the job in a superior manner as compared to an applicant alleged to have no current examples of managerial or technical expertise within the last few years as the defendant seems to suggest. *Supra* at Para. No. 7.

9. Plaintiff needs discovery in order to secure all of the references, formal and informal made by the defendant to proposed employers about the plaintiff. This will show that the defendant actively discredited the plaintiff for employment supporting plaintiff's contention of retaliation in phases of employment particularly since January 4, 1988 gong forward. It is ludicrous to believe that the defendant never used plaintiff's personnel file in any manner or at any stage of the evaluation process. Moreover, the senior advisors included a number of managers and senior officials who were at the Department of Transportation when the plaintiff worked there as well as her subsequent litigation with the agency, *e.g.*, Under Secretary Jeffrey Neil Shane. He has to be deposed first.

10. Defendant did not properly assess plaintiff's Qualifications Brief along with a copy of her resume. The director of the office does not himself perform economic analysis, there are staff, *i.e.*, hire good staff. All the director has to do is make sure the economic analyses cover all relevant issues, uses sound economic principles and meet the regulatory requirements, the latter a legal assessment within economic framework.

11. Defendant asserts in Paragraph No.7 that it acknowledged the receipt of the plaintiff's application, but it failed to acknowledge that plaintiff attempted to speak to Nancy Gauthier on several occasions after April 1, 2004 by telephone at 1-800-525-2878, leaving messages that she refused to answer. If the process was so above board why was there so much subterfuge and a delay in making a decision when as the defendant claims the answer was so obvious that plaintiff only met the minimum qualifications in a pool of 7 applicants, all white males and one Black female, the plaintiff?

12. Defendant's Paragraph Nos. 10 and 11 refer to an affidavit by Nancy L. Gauthier and her alleged statement that she made the initial assessment as to whether each

applicant met the basic qualifications, a function for the panel. The assertions have not been subjected to cross-examination as to how such assessment was obtained or modified. I assert that Ms. Gauthier and senior officials were in communication about my application and how to handle it. Plaintiff has to be able to depose Ms. Gauthier after document production and interrogatories as appropriate.

13. In Defendant's Paragraph No. 8, defendant asserts that Jack Wells' doctorate in economics is self-defining when in fact plaintiff's juris doctor is the equivalent of a doctorate and together with her graduate education in economics is equal in the application of economic principles to legal principles. Jack Wells held positions where he was primarily responsible for gathering transportation statistics (chief of data collection only) rather than the preparation of economic analysis of the transportation industry. Mr. Wells was allowed by the United States government to freely pursue his career, the plaintiff was not allowed to do so as a form of continuing discrimination and retaliation flowing from Reshard v. Burnley (Mineta 1), Civil No. 87-2794. Two other candidates, Carl Swerdloff and Regis Milan were at the agency when plaintiff was there and were allowed to freely work in their professions. The defendant agency asserts that OPM approved the appointment of Mr. Wells, which is not definitive as to whether the process was non-discriminatory or non-retaliatory against the plaintiff. The OPM does what the agency asks it to do. For example, Rosalind Ellingsworth only had a high school diploma but she was selected for a Senior Executive Service position by the Office of the Secretary officials (Jeffrey N. Shane participated in that one too) over a Francis Bohan who had been a division level manager, with years of direct experience and degrees at the college level. *See Reshard v. Burnley (Mineta* 1), Civil Case No. 87-2794, Dkt. No. 121 at Para. 11, 2/12/1999 and Dkt. No. 171 at Para 11, 5/14/2003, Plaintiff's

Memorandum of Law in Support of Motion for Summary Judgment and Default Judgment.

14. In Defendant's Paragraph No. 9, defendant fails to adequately represent plaintiff's management and technical expertise or the fact that plaintiff has a pending litigation against the Office of the Secretary of the United States Department of Transportation. *Supra*, Para. No. 13. Defendant fails to acknowledge plaintiff's work regarding the economic regulation of mergers and acquisition and antitrust issues across all industries. Much of the economic analyses in this field also apply to the transportation industry across all modes.

15. In Defendant's Paragraph Nos. 12, 13, 14, and 15, state that the panel reviewed the applications, rated them and selected John Wells. When was the rating criteria developed as well as a timeline as to each point in time Nancy Gauthier or some other member of the agency created and modified the rating criteria used by the panel? Did anyone at the agency modify the rating criteria after plaintiff's application was received as well as any other communication within the agency regarding such modification is an issue that requires full and complete discovery. As Plaintiff stated in Paragraphs Nos. 4, 5, 7 and 8, the panel failed to consider all of my experience provided and then diminished the value of my managerial and technical experience by stating that it was not current, glossed over or they didn't quite remember the plaintiff. Defendant stated "Plaintiff's experience in the technical areas was not sufficient to meet the job requirements." See Dkt. No. 6, Defendant's Memorandum in Support of Motion for Summary Judgment, p. 8, 1/12/2007. Yet defendant claims that plaintiff was qualified for the position. Which is it? Similarly, Ms. Sheri Y. Alston stated, "I do not recall much of Ms. Reshard's application." *Id.*, Exht. F4, p. 1, Para no. 4. The remainder of the

paragraph is broad and general without making specific reference to which technical requirements the plaintiff did not adequately address. Yet they rated Mr. Wells as very qualified when one of his primary positions was merely the supervisor of economic data collection. Clearly, plaintiff must have the right to depose the members of the panel and all agency personnel who had any association with or authority to make decisions affecting the selection process and policy relating to both positions at the agency. For example, it is easy to withdraw a position in order to avoid a charge of discrimination under Title VII under the pretext of some other agency policy.

16. Ms. Alston also stated in referring to the plaintiff, "She was also an attorney and not an economist." Similarly, Bruce J. Carlton stated, "Her area of expertise appeared to be as an attorney and not as an economist." *See* Bruce J. Carlton Affidavit, Exht. F5, p. 1, Para no. 4. Clearly neither of the panel members took their duties seriously and responded in a manner that demonstrate that my application was merely glossed over and not fully evaluated against the standards for the position. Defendant's Exhibit F6a certainly states that the managerial requirements involve leading change, leading people, results driven and building coalitions/communications all of which are effectively executed by delegation and meetings.

17. In a continuation of plaintiff's technical qualifications, plaintiff could not have been an economist for nearly 11 years and not have met all three requirements. For example no. 2 of the technical requirements required "Ability to guide and direct analysis of these concepts…". Plaintiff clearly stated on her resume that was part of the package references to her routine job functions at a high level within the agency: "Performed and managed economic and policy studies including antitrust issues. Analyzed economic regulations and made public policy recommendations based on economic analyses to

principals of the Department.", Defendant's Exht. F7a, p. 4. But compare Jack Wells's position as Chief Economist of Transportation Statistics, a data collection position. There is very little Economic analysis by him that would measure the kind set forth in the job description. The panelist apparently assumed that he performed economic analysis, econometrics or other sophisticated quantitative and qualitative analyses of the nature set forth in the job announcement. In fact all one has to do is look at Defendant's Exhibits 7a-e, to see that all of the applicants are white males and based on their resumes and presentation, it is unbelievable that all of them were referred as highly qualified and the plaintiff was not. Clearly, the references to regulatory throughout the technical aspects directly links legal to the position and can only be considered an enhancement, none of the other applicants had. Clearly the panel members did not properly evaluate my expertise in relation to the requirements of the position. Only two of the other candidates had doctorates in economics, but all of their positions as either a director or division chief were merely in the role of data collectors, but yet they were all rated above the plaintiff. *Id.*

18. Regarding Defendant's Paragraphs 16, the Senior Executive Service Appointment Proposal does not speak to any specific items other than that there were 6 white males, but nothing that would validate the process. Defendant's Paragraph 18 states that Mr. Wells was only appointed on October 31, 2004 but according to the agency website, Mr. Wells was appointed to the position in November after plaintiff complained about the process on November 1, 2004. The agency notified the applicants on November 12, 2004. The alleged October appointment is not documented in the record as the document authorizing the appointment of Mr. Wells does not contain a date, only the signatures of Assistant Secretary Frankel and Under Secretary Jeffrey N. Shane. Defendant's Dkt. No.

6, Exht. F6e. Ironically after having my telephone calls to Ms. Gauthier ignored, I wrote a letter on November 1, 2004 to the office of personnel for the agency and to the Assistant Secretary Emil Frankel complaining about the delay. The date of the appointment is a fact in issue, suggesting that the authorizing appointment was backdated after the plaintiff complained that the six-months delay was in retaliation to plaintiff's EEO activity against the agency. Plaintiff asserts that the initial six-weeks review and appointment process took six-months because the agency was further coordinating how to handle the fact that plaintiff had applied for two senior executive service positions.

**WHEREFORE**, plaintiff urges the Court to deny the motion in its entirety. The defendant fails to meet its burden of proving that it is entitled to summary judgment as a matter of law in this case. There are many genuine issues of fact in this case.

Dated: February 25, 2008

*[signature: Connie C. Reshard]*

Connie C. Reshard
Plaintiff, *Pro Se*
1435 4th Street, SW
Washington, DC 20024
202-554-7472
202-554-7471 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that the Plaintiff's Supplemental Response in Opposition to Defendant's Motion for Summary Judgment in the above styled case was served by United States Postal Service, first-class, postage prepaid mail on February 25, 2008 to Wyneva Johnson, Assistant U.S. Attorney for the District of Columbia, Judicial Center Building, 555 4th Street, NW, E-4106, Civil Division, Washington, DC 20530.

*Connie C. Reshard*

Connie C. Reshard