# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| CONNIE RESHARD                          ) | |
|                                         ) | |
|     Plaintiff,       ) | |
|                                         ) | |
|   v.                           )   Civil Action No. 06-1136 (RBW) |
|                                         ) | |
| MARY PETERS,                            ) | |
| SECRETARY OF TRANSPORTATION,            ) | |
| UNITED STATES DEPARTMENT OF             ) | |
| TRANSPORTATION                          ) | |
|                                         ) | |
|     Defendant,       ) | |
| _____ ) | |

## MEMORANDUM OPINION

The plaintiff, Connie Reshard, brings this action against the defendant, Mary Peters, as

United States Transportation Secretary[1], pursuant to Title VII of the Civil Rights Act of 1964

("Title VII"), as amended, 42 U.S.C. §§ 2000e-2, 3, 16, 16a, 16b (2000), alleging that she was

unlawfully discriminated against based on her race (Black of African descent), gender (female),

and retaliated against when she was not selected in 2004 as the Director of the Office of

Economic and Strategic Analysis advertised in Job Announcement OST-04-001-NG ("Director

position").  Complaint ("Compl.") ¶¶ 1,4.   The plaintiff also alleges that the defendant

discriminated against her based on her age in violation of the Age Discrimination in Employment

Act, 29 U.S.C. § 623(a) (2000).  Id. ¶1.  The plaintiff alleges both disparate impact and

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), the Court has substituted the current Secretary of Transportation, Mary Peters, for the former Secretary, Norman Minetta, as the defendant in this action.  Ms. Peters is being sued solely in her official capacity as Secretary of the Department of Transportation. Compl. ¶¶ 1, 3.

intentional discrimination.  Id. ¶1.  Currently before this Court is the defendant's Motion for

Summary Judgment,[2] which is opposed by the plaintiff.  Upon consideration of the parties'

submissions and the entire record, the Court concludes that the defendant's  motion must be

granted.

## I.  FACTUAL BACKGROUND

The following facts are undisputed except where otherwise noted by the Court.  In

January, 2004, the United States Department of Transportation ("Department") published a five

page job announcement, Number OST-04-001, for the position of Director of the Office of

Economic and Strategic Analysis located in the Office of the Secretary and Office of the

Assistant Seretary for Transportation Policy.  Def.'s Mem., Exhibit ("Ex.") F6a (Amendment

Career Opportunity, United States Department of Transportation, Office of the Secretary) ("Job

Announcement").  The Job Announcement described the position as a senior position within the

Department with duties including "[s]erv[ing] as the Chief Economic Advisor to the Under

Secretary for Transportation Policy[;] [c]onduct[ing] economic evaluations of significant

regulations affecting transportation[;] [p]rovid[ing] policy recommendations based on economic

analysis to the Secretary and Under Secretary[; and] provid[ing] guidance to the operating

administration on economic assumptions, forecasting and economic analysis."  Id. at 2.  The Job

Announcement also described the "[m]anagerial" and "[t]echnical" requirements of the position,

id. at 2-3, and directed applicants to file, inter alia, a "Qualifications Brief" that addressed "how

---

[2] The following papers have also been submitted in connection with this motion: (1)
Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment
("Def.'s' Mem."), (2) Plaintiff's Opposition to Defendant's Motion for Summary Judgment  ("Pl.'s
Opp'n"), and (3) Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion for
Summary Judgment  ("Def.'s Reply").

[the applicants'] experience, education, training, awards, and/or self-development activities [met] the qualifications listed [in the Job Announcement]." Id. at 4-5.  The announcement was subsequently amended to extend the closing date for applications to March 31, 2004. Id. at 1.

The Department received the plaintiff's application for the position on March 31, 2004. Id., Ex. F7a (letter, resume and Qualification Statement of Connie Reshard) ("Plaintiff's Application"). The Department acknowledged receipt of the plaintiff's application on April 1, 2004.  Id., Ex. F1, Attachment ("Attach.") 2.  The plaintiff's application indicated that she has a Bacherlor of Arts in Economics from Florida A & M University, a Masters degree in Economics from City University of New York  and a Juris Doctor degree from Georgetown University.  Id., Ex. F7a (Plaintiff's Application).  She had been employed as an economist in the Department's Office of the Secretary from 1977 to 1988 as a grade GM-14 employee. Id. In contrast, the selectee, Jack Wells, holds a Bachelor of Arts in Economics from Harvard University and a Ph.D. degree in Economics from Yale University. Id., Ex. F7b (Employment Application of Jack Wells) ("Wells' Application").  His application also demonstrated that he has held a number of senior level positions at the Department, including, inter alia, Chief Economist in the Bureau of Transportation Statistics and Deputy Administrator of the Federal Railroad Administration. Id. at 1-2. He also had served as a Senior Democratic Professional Staff Member for the United States House of Representatives' Subcommittee on Ground Transportation Committee on Transportation and Infrastructure and held other senior level positions while employed as a congressional employee.  Id. at 3.

**The Administrative Application Process**

Nancy L. Gauthier, a Human Resource Specialist in the Department, processed the

applications.  Id., Ex. F2 (Affidavit of Nancy L. Gauthier) ("Gauthier Aff.") at ¶2.  Ms. Gauthier reviewed the applications to assess "basic qualifications", which the plaintiff was determined to have, id. ¶4,  and then the applications were sent to a panel for further review, id. ¶2.  When Ms. Gauthier conducted her review she was unaware that the plaintiff had instituted prior employment discrimination proceedings against the defendant. Id. ¶1.

The panel members who reviewed the applications were Department employees Jane Bachner, Sherri Alston, and Bruce Carlton.[3]  Id. ¶4. "The panel members compared the applications with the crediting plan and rated and ranked the applicants." Id. ¶3.  The applicants were rated as either highly qualified, well qualified, or minimally qualified based on the qualification factors designated for the position.  Id. ¶5. This "process resulted in the creation of a best qualified list which was sent to the selecting official[,] who interviewed all applicants prior to making a selection." Id. ¶3.  However, the plaintiff "did not make the best qualified list based on the review by the panel" and she was not interviewed by the selecting official for the position. Id.  ¶4.

**The Panel Members' Affidavits**[4]

Panel member Bachner stated in her affidavit that she "rated each application against the technical rating criteria and not against the other applicants." Id., Ex. F3 (Affidavit of Jane

---

[3] Ms. Bachner is a white female and at the time of her participation in the selection process at issue, she was 56 years old. Id., Ex. F3 (Affidavit of Jane Bachner) ("Bachner Aff.") ¶1. Ms. Alston is an African-American female, and she was 62 years old when she was a member of the panel. Id., Ex. F4 (Affidavit of Sherri Y. Alston) ("Alston Aff.") ¶2. Mr. Carlton is a white male who was 57 years old when the selection for the at issue was made. Id., Ex. F5 (Affidavit of Bruce J. Carlton) ("Carlton Aff.") ¶2.

[4] The plaintiff disputes the panel members' statements made in their affidavits. However, she has not submitted any evidence, including affidavits of her own, to dispute their statements. Instead, she has submitted only her own conclusory challenge in response to their affidavits.

Bachner) ("Bachner Aff.") ¶3.  Ms. Bachner further stated that she had "never met" the plaintiff

and "only rated [the plaintiff] based on the information provided in her application.  Id.  Ms.

Bachner further stated in her affidavit that the plaintiff provided only minimal information

regarding her technical  qualifications.  Id.  Specifically, although the plaintiff indicated she had

"some... experience in economic analysis in passing, she did not describe it [with any detail]."

Id.  In contrast, Ms. Bachner found that the applicants who made the best qualified list had "a

great deal of economics analysis experience and had work extensively with senior officials."  Id.

¶4.  Further, the best qualified applicants also had both broad experience in various modes of

transportation and had a great depth of work experience in those areas.  Id.  Ms. Bachner also

stated that she was unaware that the plaintiff had previously filed a discrimination complaint

against the defendant, id. ¶1,  and "there was never any discussion or consideration of the race,

sex, age, or EEO activity of [the plaintiff] or any of the other applicants," id. ¶5.

Panel member Alston also noted that she compared each application "with the selecting

criteria . . . and did not compare them to one another."  Id., Ex. F4 (Affidavit of Sherri Y. Alston)

("Alston Aff.") ¶2.  Ms. Alston "rated [the plaintiff] minimally qualified" because "she had

limited experience in the technical requirement areas, and... did not adequately address the

qualifications requirements" for the position in her application.  Id. ¶4. Instead, the plaintiff's

application "focused more on attending meetings[, rather] than on the technical work areas."  Id.

In fact, Ms. Alston stated that "[t]he applicants that eventually were placed on the best qualified

list did a better job of addressing the criteria against which they were being judged."  Id.  Ms.

Alston further indicated that she was unaware of any "prior EEO activity of [the plaintiff]", id.

¶1, and that "[t]here was never any discussion of the race, sex, age, or EEO activity of [the

plaintiff] or any of the other applicants," id. ¶5.

Panel member Carlton stated that he "rated each of the applicants based solely on the documentation given to [him and]... compared their answers and information to the mandatory technical skills of the position as well as the managerial requirements." Id., Ex. F5 (Affidavit of Bruce J. Carlton) ("Carlton Aff.") ¶2.  Mr. Carlton indicated that he "did not compare one applicant against another applicant", id. ¶2, instead, he judged each application against the "three technical requirements" for the position. Id.  He recalled that he "rated [the plaintiff] as minimally qualified" because "[h]er highest grade in government service was a GS-14" and "[h]er area of expertise appeared to be as an attorney and not as an economist."[5]  Id.  ¶4. Mr. Carlton stated that after reviewing the packages, the three panel members "had a candid discussion concerning their individual assessments of each applicant...."  Id.  ¶3. "In some cases, such as that of [the plaintiff], [the panel members'] individual ratings were the same in all three areas."  Id.  Mr. Carlton further noted that he was unaware of any "prior EEO complaint activity" by the plaintiff, id. ¶1, and that "[t]here was never any discussion of the race, sex, age, or EEO activity of [the plaintiff] or any of the other applicant," id. ¶5.

**The Final Selection**

The best qualified list consisted of six candidates. Id., Ex. F6c (Selection Certificate). The

---

[5] After refreshing his recollection upon a review of the plaintiff's "resume and her narratives about her experience, accomplishments, and knowledge", Mr. Carlton "recall[ed] that for both the managerial requirements... and technical requirements, [the plaintiff] did not address the three requirements individually as directed in the vacancy announcement." Id. ¶5.

selecting officials, Emil Frankel[6] and Jeffery Shane[7], selected two of the best qualified candidates for the position at issue, with Mr. Wells named as the first selection and Richard Klein identified as the second choice. Id.; see also id., Ex. F6e (Senior Executive Service (SES) Appointment Proposal). On November 5, 2004, approval of the selecting officials' decision to select Mr. Wells for the Chief Economist position was finalized by the Department's Personnel Officer. Id., Ex. F6f (Notification of Personnel Action form).

**Plaintiff's Retaliation Claim**

The plaintiff had previously been employed by the Department from 1977 to 1988. Id., Ex. F7a (Plaintiff's Application letter and resume). She contends that she "was wrongfully discharged by the Department on January 4, 1988, after making formal administrative complaints of discrimination and retaliation and after filing [another] civil action in this Court, Reshard v. Minetta, Civ. Action No. 87-2794 (D.D.C. 1987)". Compl. ¶7. As to her current claim of retaliation, the plaintiff alleges that "[a]s a result of the defendant's deliberate and intentional efforts to prevent [the] plaintiff from securing employment in general and in particular, at the Department of Transportation or any other federal agency, [the] defendant never considered [the] plaintiff's application for employment for the Senior Executive Service position as Director of the Office of Economic and Strategic Analysis." Id. ¶9.  Accordingly, the plaintiff posits that the defendant retaliated against her for activity stemming from her engaging in protected activity in 1988, including the filing of the earlier lawsuit against the Department, resulting in her not being selected for the challenged position. Id.

---

[6] Mr. Frankel was the Assistant Secretary for Transportation Policy. Id.

[7] Mr. Shane was the Under Secretary of Transportation Policy. Id.

7

As a result of the plaintiff's non-selection for the Director, Office of Economic and Strategic Analysis position, she filed the instant action on June 22, 2006. See Compl.

## II.  STANDARD OF REVIEW

Courts will grant a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) . When ruling on a Rule 56(c) motion, the Court must view the evidence in the light most favorable to the non-moving party. Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)). The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The non-moving party, however, cannot rely on "mere allegations or denials," Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248) (internal quotation marks omitted), and "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citation omitted). Simply put, "conclusory allegations unsupported by factual data will not create a triable issue of fact." Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal quotation marks and citations omitted). Rather, to withstand a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "[T]here is no [genuine] issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party,"

Anderson, 477 U.S. at 249 (citation omitted), if the Court concludes that the evidence adduced by the non-moving party "is merely colorable . . . or is not significantly probative," id. (citations omitted), or if the non-moving party has otherwise "failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Finally, "[a]ll supporting and opposing affidavits [submitted in connection with a Rule 56(c) motion] shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).

## III.  LEGAL ANALYSIS

Title VII provides, in relevant part, that all "personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any discrimination based on race." 42 U.S.C. § 2000e-16(a). In evaluating claims of racial discrimination in employment under Title VII, it is useful to remember the District of Columbia Circuit's repeated admonition that the statute does not, and was not intended to, transform the Court into "a super-personnel department that reexamines an entity's business decisions." Holcomb, 433 F.3d at 897 (internal quotation marks and citations omitted). Indeed, "Title VII liability cannot rest solely upon a judge's determination that an employer [has] misjudged the relative qualifications of admittedly qualified candidates." Fischbach v. D.C. Dep't of Corrs., 86 F.3d 1180, 1183 (D.C. Cir. 1996) (citation omitted). "Short of finding that the employer's stated reason [for its selection decision] was [merely] a pretext [for unlawful discrimination,] . . . the [C]ourt must respect the employer's unfettered discretion to choose among qualified candidates." Id. (citations omitted). In this regard, "the ultimate burden of persuading the trier of fact that the

[employer] intentionally discriminated against the plaintiff remains at all times with the plaintiff." <u>Reeves</u>, 530 U.S. at 142 (internal quotation marks and citation omitted).

Where, as here, the plaintiff has not proffered any direct evidence of intentional discrimination, her race discrimination claims under Title VII are evaluated pursuant to the burden-shifting framework first articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 803-805 (1973).[8] <u>Weber v. Battista</u>, 494 F.3d 179, 182 (D.C. Cir. 2007). Under this framework, the plaintiff bears the initial burden of "establish[ing] a prima facie case of discrimination by a preponderance of the evidence." <u>Id.</u> (internal quotation marks and citation omitted). To do so in the context of an adverse selection decision case, the plaintiff must demonstrate that "(1)[s]he is a member of a protected class; (2) [s]he applied for and was qualified for an available position; (3) despite [her] qualifications[,] [s]he was rejected; and (4) either someone filled the position[,] or the position remained vacant and the employer continued to seek applicants." <u>Jackson v. Gonzales</u>, 496 F.3d 703, 707 (D.C. Cir. 2007) (internal quotation marks, citation, and ellipsis omitted); <u>see also</u> <u>Holcomb</u>, 433 F.3d at 895 (same). If the plaintiff succeeds in establishing a prima facie case in this manner, "the burden shifts to the defendant employer to produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." <u>Jackson</u>, 496 F.3d at 707 (quoting <u>Reeves</u>, 530 U.S. at 142) (internal quotation marks omitted). If the employer presents such an explanation, "to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the

---

[8] "Direct evidence of discrimination is evidence that, if believed by the fact finder, proves the particular fact in question without any need for inference. Such evidence includes any statement or written document showing a discriminatory motive on its face." <u>Lemmons v. Georgetown Univ. Hosp</u>, 431 F. Supp. 2d 76, 86 (D.D.C. 2006) (Walton, J.) (internal quotation marks, citations, and ellipsis omitted) (emphases in original). The plaintiff does not argue, nor could she, that the factual record in this case contains any such direct evidence of discrimination.

adverse employment decision was made for a discriminatory reason." Holcomb, 433 F.3d at 896-97 (internal quotation marks and citation omitted); see also Weber, 494 F.3d at 182 (stating that "the plaintiff must [ultimately] demonstrate that the employer's stated reason was pretextual and that the true reason was discriminatory") (internal quotation marks and citation omitted).

**The Plaintiff's Race and Sex Discrimination Claims**

The plaintiff contends that she was discriminated based on race and sex when she was not selected for the Director of the Office of Economic and Strategic analysis position.  Compl. ¶ 1; Pl.'s Opp'n at 2.  In opposition, the defendant responds that the plaintiff cannot rebut the defendant's articulated nondiscriminatory reasons for its decision not to select her.  Def's Mem. at 6.

As an African-American female, it is undisputed that based upon the allegations being made by the plaintiff she can establish a prima facie case of race and sex discrimination.  Compl. ¶ 1; Def.'s Mem. at 6 (conceding that the plaintiff can prove her prima facie case).  Since the defendant concedes that the plaintiff can establish a prima facie case of race and sex discrimination, the defendant must satisfy its burden in producing evidence that the plaintiff was rejected, or someone else was selected, for a legitimate, nondiscriminatory reason. The defendant has met this burden, asserting that the plaintiff was not selected for the position because she "did not make the best qualified list based on the review by the panel." Def.'s Mem. at 6.; see Holcomb, 433 F.3d at 896 (concluding that the defendant had articulated a legitimate, nondiscriminatory reason for its failure to promote the plaintiff where the selecting official submitted an affidavit stating that "she chose [the selectee] because she was the best applicant and [because] the person with the best skills and abilities to do the job should be selected")

11

(internal quotation marks omitted); <u>George v. Leavitt</u>, 407 F.3d 405, 412 (D.C. Cir. 2005)

(describing "an absolute or relative lack of qualifications" as one of the "most common

legitimate reasons on which the employer might rely to reject a job applicant") (internal

quotation marks and citations omitted) (emphasis added).  In fact, all three panel members who

rated the candidates concluded that the plaintiff was minimally qualified for the position because

she had limited experience in the required technical areas and most of her experience was as an

attorney.  Def.'s Mem., Ex. F3 (Bachner Aff.)  ¶4, Ex. F4 (Alston Aff.) ¶4, Ex. F5 (Carlton Aff.)

¶4.  And this assessment resulted from the panel members rating each application against the

technical rating criteria and not against the other applicants.  <u>Id.</u>, Ex. F3 (Bachner Aff.)  ¶3, Ex.

F4 (Alston Aff.) ¶3, Ex. F5 (Carlton Aff.) ¶3.

Specifically, panel member Ms. Bachner stated that the plaintiff did not provide much

information regarding her technical  qualifications.  <u>Id.</u>, Ex. F3 (Bachner Aff.)  ¶3.  Ms. Bachner

found that although the plaintiff "mentioned some of her experience in economic analysis in

passing, . . . she did not describe it much in depth."  <u>Id.</u>  In contrast, Ms. Bachner noted that

"[t]he applicants who made the best qualified list . . . had a great deal of economics analysis"

experience.  <u>Id.</u>  ¶4.  Further, Ms. Bachner found that the best qualified applicants also "had both

broad experience in many modes of transportation and had a great depth of work in those areas."

<u>Id.</u>  Similarly, panel member Alton found that the plaintiff did not adequately address the

qualifications requirements for the position in her application.  Def.'s Mem., Ex. F4 (Alston Aff.)

¶4.  Instead, the plaintiff's application "focused more on attending meetings[, rather] than on the

technical work areas."  <u>Id.</u>  In fact, Ms. Alston noted that the applicants who "eventually were

placed on the best qualified list did a better job of addressing the criteria against which they were

being judged." Id.  Mr. Carlton also had similar conclusions.  He stated that he "rated each of the

applicants based solely on the documentation given to [him and] compared their answers and

information to the mandatory technical skills of the position as well as the managerial

requirements."  Def.'s Mem., Ex. F5 (Carlton Aff.) ¶2.  He indicated that he "did not compare

one applicant against another applicant, but instead, he judged each application against the three

technical requirements designated for the position.  Id. Mr. Carlton rated the plaintiff as

minimally qualified because "[h]er highest grade in government service was a GS-14" and "[h]er

area of experience appeared to be as an attorney and not as an economist."  Id.

After reviewing the candidate applications, the panel members "had a candid discussion

concerning [their] individual assessments of each applicant...."  Id.  ¶3. "In some cases, such as

that of the plaintiff, the panel members' individual ratings were the same in all three areas."  Id.

Thus, the plaintiff was not selected as one of the best qualified candidates and she was not

referred to the selecting officials as a recommended candidate for the position.   Ultimately, the

position was offered to Mr. Wells because he satisfied the criteria identified for the position and

was the best qualified. Def.'s Mem., Ex. F6e (Senior Executive Service Appointment Proposal)

at 3.

Although the plaintiff challenges the legitimate, nondiscriminatory reasons proffered by

the defendant, the defendant's burden, at this stage, is only one of production; thus, the defendant

"need not persuade the court that [she] was actually motivated by the proffered reasons." Texas

Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248,  254 (1981); see St. Mary's Honor Ctr. v. Hicks,

509 U.S. 502, 507 (1993) (employer's burden is burden of production); Teneyck v. Omni

Shoreham Hotel, 365 F.3d 1139, 1153 (D.C. Cir. 2004) (same); Freeman v. Lewis, 675 F.2d 398,

399 (D.C. Cir. 1982) (same). Because the Court finds that the evidence produced by the defendant is more than sufficient to "constitute[ ] a legitimate, nondiscriminatory reason for the allegedly discriminatory action," Holcomb, 433 F.3d at 896, the defendant has satisfied its burden under the McDonnell Douglas framework, thereby allowing "the presumption of discrimination [to] simply drop[ ] out of the picture," id. (internal quotation marks and citation omitted). Thus, "the only question is whether the defendant intentionally discriminated against the plaintiff," Czekalski v. Peters, 475 F.3d 360, 364 (D.C. Cir. 2007) (quoting U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983)) (internal quotation marks and other citations omitted), and "the plaintiff can survive summary judgment only by . . . prov[ing] that a reasonable jury could infer that the employer's given explanation was pretextual and that this pretext shielded discriminatory motives," Jackson, 496 F.3d 707 (citations omitted); cf. Holcomb, 433 F.3d at 895 (stating that there is a genuine issue of material fact only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party") (internal quotation marks and citation omitted).[9]

The District of Columbia Circuit has held that "[i]n order to justify an inference of discrimination, the qualifications gap [between the selectee and the plaintiff] must be great

---

[9] In this regard, the Court must consider, "in its full context," all of the evidence in the record. Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1290 (D.C. Cir. 1998) (en banc). This includes "(1) evidence establishing the plaintiff's prima facie case; (2) evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff, such as independent evidence of discriminatory statements or attitudes on the part of the employer." Holcomb, 433 F.3d at 897 (citation omitted). If the plaintiff is ultimately "unable to adduce evidence that could allow a reasonable trier of fact to conclude that [the defendant's] proffered reason was a pretext for discrimination, summary judgment must be entered against [the plaintiff]." Paquin v. Fed. Nat'l Mortgage Ass'n, 119 F.3d 23, 27-28 (D.C. Cir. 1997) (citation omitted).

enough to be inherently indicative of discrimination."[10]   Holcomb, 433 F.3d at 897 (citations

omitted). Otherwise, the Court may assume that "[w]hen an employer says it made a hiring

decision based on the relative qualifications of the candidates, . . . a reasonable juror who might

disagree with the employer's decision, but would find the question close, would not usually infer

discrimination on the basis of qualifications alone." Jackson, 496 F.3d at 707 (internal quotation

marks and citation omitted). Rather, "[i]n a close case, a reasonable juror would usually assume

that the employer is more capable of assessing the significance of small differences in the

qualifications of the candidates, or that the employer simply made a judgment call." Holcomb,

433 F.3d at 897 (internal quotation marks and citation omitted). On the other hand, if a factfinder

could conclude, based on the evidence presented, "that a reasonable employer would have found

the plaintiff to be significantly better qualified for the job, but this employer did not, the

factfinder can legitimately infer that the employer consciously selected a less qualified candidate,

something that employers do not usually do," absent "some other strong consideration, such as

discrimination." Jackson, 496 F.3d at 707 (internal quotation marks and citation omitted)

(emphasis added); see also Holcomb, 433 F.3d at 897 (stating that "a factfinder could infer

discrimination if the evidence showed a reasonable employer would have found the plaintiff

significantly better qualified for the job but nevertheless failed to offer the position to [him]")

(citation omitted) (emphasis in original).

　　　"Once [an] employer has articulated a non-discriminatory explanation for its action, the

_____

[10] To make this showing, plaintiffs cannot simply "compar[e] [their] qualifications against those of the successful applicant[s]," but "[must] expose other flaws in the employee's explanation, including ... showing [that] the employer has misstated [their] qualifications." Holcomb, 433 F.3d at 897 (citation omitted); see Jackson, 496 F.3d 707 (stating that "a plaintiff may present evidence to show that the employer's qualifications-based explanation is incorrect or fabricated") (internal quotation marks and citations omitted).

issue is not the correctness or desirability of [that explanation] but whether the employer honestly believes in the reasons it offers." <u>George</u>, 407 F.3d at 415 (internal quotation marks and citation omitted). The plaintiff may then attempt to demonstrate the pretextual nature of the employer's stated motive "either directly by persuading the [C]ourt that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Id.</u> at 413 (internal quotation marks and citation omitted).  The plaintiff predominantly adopts the latter tactic, arguing that the defendant's stated explanation for her nonselection–the purportedly superior qualifications of Mr. Wells–is not credible because "the defendant fails to adequately represent [her] management and technical expertise or the fact that [the] plaintiff has a pending lawsuit  against the Office of the Secretary of the United States Department of Transportation."  Pl.'s Opp'n ¶ 14.  And, the plaintiff argues that the agency's assessment and analysis of her qualifications are factual disputes suitable for discovery.[11]  <u>Id.</u>

---

[11] Although the plaintiff asserts that discovery in this case is necessary because "the defendant government has all of the resources and conducted the administrative inquiry without the benefit of the Federal Rules of Civil Procedure[,]" Pl.'s Opp'n ¶1, she has failed to submit a Rule 56(f) affidavit in conjunction with her opposition.  Instead, she  requests discovery throughout her opposition so that she may adequately respond to the defendant's Motion for Summary Judgment. <u>Id.</u> Rule 56(f) states: "If a party opposing the motion shows by affidavit that, for specified reasons, [she ]cannot present facts essential to justify [her] opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." Fed. R. Civ. P. 56(f).  Even if the <u>pro se</u> plaintiff can be excused from filing a Rule 56(f) affidavit, her request for discovery as referenced in her opposition to the defendant's motion for summary judgment is inadequate because she does not identify any probable facts not already available to her that would raise a triable issue of fact, nor does she state with specificity how discovery would produce facts to rebut the defendant's summary judgment motion.  The District of Columbia Circuit has held that the party seeking discovery bears the burden of identifying the facts to be discovered that would create a triable issue and the reasons why the party cannot acquire those facts without discovery to challenge a motion for summary judgment. <u>Byrd v. Envtl. Prot. Agency</u>, 174 F.3d 239, 248 n. 8 (D.C. Cir. 1999) (citation omitted). The party seeking discovery must also demonstrate a reasonable basis for believing that the requested discovery will uncover triable issues of fact. <u>Carpenter v. Fed. Nat'l Mortgage Ass'n</u>, 174 F.3d 231, 237. Simply stated, the plaintiff has not met this burden.  She does allege in her opposition that "[t]here are genuine issues of material facts in dispute in this case that cannot be

(continued...)

---

[11](...continued)

decided without further fact-finding." Pl.'s Opp'n ¶3. She then goes on to list the issues she believes would create genuine issues of material fact sufficient to defeat the defendant's motion for summary judgment. Specifically, the plaintiff wants to conduct discovery to determine: (1) what the Office of the Secretary told prospective employers about her regarding her past employment with the Department of Transportation between January 4, 1988, to the present, including obtaining all recommendations, formal and informal, made by the defendant to prospective employers, Pl.'s Opp'n ¶5; (2) what Nancy Gauthier and others in the personnel office knew about her when she was under consideration for the position at issue, id; (3) when each applicant submitted their applications and whether they were submitted before or after the job announcement was amended, id.; and (4) whether the agency asked certain applicants to apply for the position at issue, and if so, when. It is clear from the Circuit's decision in Strang v. U. S. Arms Control & Disarmament Agency, 864 F.2d 859 (D.C. Cir. 1989), that the plaintiff's discovery request is plainly inadequate as a matter of law.

In Strang, the court explained that "Federal Rule of Civil Procedure 56(f) provides that a court may deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion adequately explains why at that timepoint, it cannot present by affidavit facts needed to oppose the motion." Id. at 861. Although the plaintiff does state generally that discovery is necessary because Ms. Guathier "assertions have not been subjected to cross-examination as to how the [initial] assessment [of the applicants] was obtained or modified," and whether "Ms. Gauthier and senior officials were in communication about [her] application and how to handle it," Pl.'s Opp'n at 7, she fails to identify facts not available to her that would raise triable issues. As the Court in Strang noted, a plaintiff's "desire to 'test and elaborate' [an] affiant['s] testimony falls short; her plea is too vague to require the district court to defer or deny dispositive action." 864 F.2d at 861 (internal citations omitted).

Here, the plaintiff has presented no affidavits in support of her summary judgment opposition, including a Rule 56(f) affidavit, nor does she state with sufficient particularity why she could not, absent discovery, present by affidavit facts essential to support her opposition. The court's analysis in Strang is directly on point in a situation like this. The Court therefore declines to delay resolution of the defendant's summary judgment motion to afford the plaintiff the opportunity to conduct discovery. Strang, 864 F.2d at 861; see also Trask v. Franco, 446 F.3d 1036, 1042 (10th Cir. 2006) (held that the trial court properly denied the plaintiffs' Rule 56(f) motion because their affidavit failed to identify any "probable facts not available" and to "state with specificity how additional discovery would rebut summary judgment motion"); Raymond v. U.S. Capitol Police Bd., 157 F. Supp. 2d 50, 55 (D.D.C. 2001) (district court granted the defendant's motion for summary judgment even though parties had not begun discovery because, even if given opportunity to conduct discovery, the plaintiff would not have been able to establish a prima facie case for any of her claims); Mendoza v. City of Rome, 70 F. Supp. 2d 137, 142 (N.D.N.Y. 1999) ("bare assertion" that evidence supporting the plaintiff's allegations is in defendant's possession was insufficient to justify Fed. R. Civ. P. 56(f) continuance). Further, the plaintiff's assertion that she "needs discovery in order to [obtain] all of the references, formal and informal made by the defendant to proposed employers about [her from January 1988 to the present]," Pl.'s Opp'n at 6, because "the defendant actively discredited the plaintiff for employment," id., and "it is ludicrous to believe that the defendant never used [the] plaintiff's personnel file in any manner or at any state of the evaluation process," id., is based on pure speculation and does not warrant affording the plaintiff the opportunity to conduct discovery. And, "[i]t is well settled that conclusory allegations unsupported by factual data will not create a triable issue of fact." Byrd v. Envtl. Prot. Agency, 174 F.3d 239, 248 n. 8 (D.C. Cir. 1999) (internal citations omitted); see also Exxon Corp. v. Crosby-Miss. Res., Ltd., 40 F.3d

17

(continued...)

¶¶12, 13, 14.

The plaintiff proffers several reasons for her assertion that the defendant discriminated against her based on race and sex when she was not selected for the position at issue. First, the plaintiff contends that her "economic skills combined with her legal skills are superior regarding the support of economic analysis to economic regulation in the transportation industry." Pl.'s Opp'n ¶ 7. Specifically, she contends that her "ability to conduct econometrics as well as other sophisticated economic analyses together with legal training and experience could only enhance her performance in the position as Director of Economic and Strategic Analysis." Id. Second, she contends that the "[d]efendant did not properly assess [her] Qualifications Brief along with a copy of her resume." Id. ¶10. The plaintiff contends that the "[Director of the Office of Economic and Strategic Analysis] does not . . . have to perform economic analysis" because one should hire good staff to do such work. Id. She asserts that "[a]ll the director has to do is make sure the economic analyses cover all relevant issues, uses sound economic principles and meet the regulatory requirements . . . ." Id. Third, the plaintiff asserts that "Jack Wells' doctorate in economics is self-defining when in fact [the] plaintiff's juris doctor is the equivalent of a doctorate and together with her graduate education in economics is equal in the application of economic and legal principles." Id. at ¶13. She further alleges that all of the positions held by the  two candidates with doctorates in economics consisted of " either a director or division chief [positions which] were merely in the role of data collectors." Id.  ¶17. Finally, the plaintiff

---

[11](...continued)
1474, 1488 (5th Cir. 1995) (holding that Rule 56(f) may not defeat summary judgment "where the result of a continuance to obtain further information would be wholly speculative"); Bastin v. Fed. Nat'l Mortgage Ass'n, 104 F.3d 1392, 1396 (D.C. Cir. 1997) (holding that a district court did not abuse its discretion when it denied a discovery request supported only by speculation).

18

asserts that "[she] could not have been an economist for nearly 11 years and not have met all three requirements." Id.  For several reasons, the Court concludes that the plaintiff has not demonstrated that the defendant's legitimate, nondiscriminatory reason for her non-selection was not a pretext for discrimination and the discovery sought by the plaintiff would not alter this conclusion.

The plaintiff's principal argument rests on her own speculative opinion and finds no support from the evidence of record.  As previously noted, all three panel members concluded that the plaintiff was minimally qualified for the position because she had limited experience in the required technical areas and most of her experience was that of an attorney.  Def.'s Mem., Ex. F3 (Bachner Aff.) ¶ 4, Ex. F4 (Alston Aff.) ¶ 4, Ex. F5 (Carlton Aff.) ¶ 4.  Panel member Bachner stated in her affidavit that the plaintiff did not provide much information regarding her technical  qualifications. Id., Ex. F3 (Bachner Aff.) ¶ 3. And, although the plaintiff "mentioned some of her experience in economic analysis in passing, . . . she did not describe it much in depth." Id.  In contrast, Ms. Bachner found that "[t]he applicants who made the best qualified list . . . had a great deal of economics analysis experience." Id. ¶ 4. Further, Ms. Bachner found that the best qualified applicants "had both broad experience in many modes of transportation and had a great depth of work in those areas." Id.  Panel member Alston also found that the plaintiff did not adequately address the qualifications requirements for the position.  Def.'s Mem., Ex. F4 (Alston Aff.) ¶4.  Instead, the plaintiff's application "focused more on attending meetings[, rather] than on the technical work areas" of the position.  Id.  In fact, Ms. Alston noted that "[t]he applicants that eventually were placed on the best qualified list did a better job of addressing the criteria against which they were being judged." Id.  Panel member Carlton stated that he "rated

19

each of the applicants based solely on the documentation given to [him and]... compared their answers and information to the mandatory technical skills of the position as well as the managerial requirements."  Def.'s Mem., Ex. F5 (Carlton Aff.) ¶2.  Mr. Carlton also stated that he "did not compare one applicant against another applicant."  Id. ¶2.  Instead, he judged each application against the three technical requirements identified for the position.  Id. As did the other panel members, Mr. Carlton rated the plaintiff as minimally qualified because "[h]er highest grade in government service was a GS-14" and "[h]er area of experience appeared to be as an attorney and not as an economist."  Id.  It was based on these assessments by the panel members that the plaintiff was not placed on the best qualified list and therefore was not selected for the position. Id.

Absent some evidence that the defendant did not "honestly believe [ ] in the reasons it offers," George, 407 F.3d at 415 (internal quotation marks and citation omitted), the Court "will not second-guess how [the defendant] weigh[ed] particular factors in the hiring decision," Jackson, 496 F.3d 709 (citation omitted); see also id. At 708 (stating that "courts must not second-guess an employer's initial choice of appropriate qualifications[,][but] rather . . . defer to the employer's decision of what nondiscriminatory qualities it will seek in filling a position") (internal quotation marks, citations, and bracketing omitted).  Further, speculation by the plaintiff as to why the defendant acted as she did is insufficient to create a triable issue of fact.  See Brown v.Brody, 199 F.3d 446, 459 (D.C. Cir. 1999) ("[A] plaintiff's mere speculations are 'insufficient to create a genuine issue of fact . . . .'") (quoting Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988); Hutchinson v. C.I.A., 393 F.3d 226, 229 (D.C. Cir. 2005) ("Hutchinson's claim rests on speculation, and as the district court concluded, 'plaintiff's

speculation does not create a genuine issue of material fact . . . .'").  "Absent sufficient evidence

of racial animus, a court may not label an employer's acts as discriminatory, even if the court

might have acted differently had it been the employer." Adams v. Tenn. Dept. of Finance &

Admin., 179 Fed.Appx. 266, 272 (6th Cir. 2006) (citing Ang. v. Procter & Gamble Co., 932 F.2d

540, 549 (6th Cir. 2006) (The aim of a court in assessing an alleged Title VII violation "is not to

review bad business decisions, or question the soundness of an employer's judgment.").

    The plaintiff has not provided any evidence to support her allegation that discrimination

was the reason for her non-selection because the "[d]efendant did not properly assess [her]

Qualifications Brief along with a copy of her resume."  Pl.'s Opp'n  ¶10.  Further, the plaintiff

has failed to explain the relevance of her allegation that "Jack Wells' doctorate in economics is

self-defining when in fact [the] plaintiff's juris doctor is the equivalent of a doctorate and

together with her graduate education in economics is equal in the application of economic and

legal principles." Id. at ¶13.  In any event, "[i]t is not enough for the plaintiff to show that a

reason given for a job action is not just, or fair, or sensible," Fischbach, 86 F.3d at 1183, as

courts are without authority to "'second-guess an employer's personnel decision absent

demonstrably discriminatory motive,'" id. (quoting Milton v. Weinberger, 696 F.2d 94, 100

(D.C. Cir.1982)). "Consistent with the courts' reluctance to become involved in

micromanagement of everyday employment decisions, the question before the court is limited to

whether [the plaintiff] produced sufficient evidence of . . . discrimination, not whether [s]he was

treated fairly. . . ." Forman v. Small, 271 F.3d 285,  291 (D.C. Cir. 2001) (citations omitted); see

also Fischbach, 86 F.3d at 1183 ("The plaintiff  must show that the explanation given is a phony

reason.").  Further, "[t]he fact that an employer based its ultimate hiring decision on one or more

specific factors encompassed within a broader and more general job description does not itself

raise an inference of discrimination sufficient to overcome summary judgment." <u>Jackson</u>, 496

F.3d 709.  "Short of finding that the employer's stated reason [for its selection decision] was

indeed a pretext [for unlawful discrimination,] . . . the [C]ourt must respect the employer's

unfettered discretion to choose among qualified candidates." <u>Fischbach</u>, 86 F.3d at 1183

(citations omitted) (emphasis added).  Here, the plaintiff has not "set forth specific facts showing

that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), with regard to the defendant not

selecting her for the Department's position as Director of the Office of Economic and Strategic

Analysis. Accordingly, the defendant's motion for summary judgment as to the plaintiff's claims

of discrimination based on race and sex must be granted.

**The Plaintiff's Age Discrimination Claim**

The plaintiff also asserts that the defendant "discriminated against [her] based upon her

age," Compl. ¶19, when she was not selected for the position at issue, <u>id.</u> ¶4.  In response, the

defendant responds that "the [p]laintiff has made no such showing of age discrimination, nor can

she."  Def's Mem. at 13.

Under the Age Discrimination in Employment Act ("ADEA"), it is "unlawful for an

employer . . . to fail or refuse to hire or to discharge any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's age."

29 U.S.C. § 623(a)(1); <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 141 (2000). To

establish a claim of age discrimination, a plaintiff must show that her age "actually played a role

in [the employer's decisionmaking] process and had a determinative influence on the outcome."

<u>Id.</u> at 141 (citation omitted). The District of Columbia Circuit has extended to ADEA cases the

evidentiary burden shifting analysis deemed applicable in Title VII discrimination cases by the Supreme Court in <u>McDonnell Douglas</u>. <u>Forman v. Small</u>, 271 F.3d 285, 292 (D.C. Cir. 2001), <u>cert. denied</u>, 536 U.S. 958 (2002); <u>Cuddy v. Carmen</u>, 762 F.2d 119, 122 (D.C. Cir. 1985); <u>Krodel v. Young</u>, 748 F.2d 701, 705 (D.C. Cir. 1984), <u>cert. denied</u>, 474 U.S. 817 (1985). As noted earlier in this opinion, under this framework, the plaintiff carries the burden of establishing a prima facie case of age discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 802.  To make out a prima facie case of age discrimination, the plaintiff must demonstrate facts sufficient to create a reasonable inference that age discrimination was "a determining factor" in the employment decision.  <u>May v. Shuttle, Inc.</u>, 129 F.3d 165, 172 (D.C .Cir. 1997), <u>cert. denied.</u>, 524 U.S. 927 (1998); <u>Cuddy</u>, 694 F.2d at 856-58. In order to create this reasonable inference, the plaintiff must show that: (1) she belongs to the statutorily protected age group, <u>i.e.</u>, 40-70, (2) she suffered an adverse employment action and, (3) the unfavorable action gives rise to an inference of discrimination. <u>Chappell-Johnson v. Powell</u> 440 F.3d 484, 488 (D .C. Cir. 2006) (citation omitted).  After the plaintiff has carried her burden of establishing a prima facie case of age discrimination by a preponderance of the evidence, the burden of production shifts to the defendant employer to provide evidence of a legitimate, nondiscriminatory reason for its action. <u>Reeves</u>, 530 U.S. at 142 (citation omitted); <u>Waterhouse v. District of Columbia</u>, 298 F.3d 989, 992 (D.C. Cir. 2002) (citations omitted). If the defendant satisfies this burden of production, the plaintiff must then discredit the defendant employer's stated reason with rebuttal evidence. <u>Waterhouse</u>, 298 F.3d at 992 (citing <u>Aka v. Wash. Hosp. Ctr</u>, 156 F.3d 1284, 1290 (D.C.Cir.1998)).

Thus, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally

discriminated against the plaintiff remains at all times with the plaintiff." Waterhouse, 298 F.3d at 992 (citing Reeves, 530 U.S. at 143, and quoting Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). The Court's focus at the summary judgment stage is whether a jury could infer discrimination from the combination of: "(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to rebut the employer's proffered explanation for its action; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) . . ." Aka, 156 F.3d at 1289 (citations omitted).

Here, the plaintiff was 56 years old at the time of her non-selection and therefore was a member of the age group protected by the ADEA.  Def.'s Mem., Ex. A1 at 3 (Plaintiff's Complaint of Discrimination in the Federal Government Supplement to Complaint of Connie Reshard dated August 31, 2005).  The plaintiff also suffered an adverse action, having not been selected as the Director of the  Office of Economic and Strategic Analysis.   However, the plaintiff cannot satisfy the third prong of an ADEA prima facie case, i.e., that her non-selection gives rise to an inference of discrimination based on age.  The plaintiff's ability to establish a prima facie case of age discrimination is defeated by the fact that  Mr. Wells, the selectee, was, like the plaintiff, also 56 years old when he was selected over the plaintiff.  Id.,  Ex. G1c, (Selection Certificate for Candidates Referred to the Selecting Official for the Position of Director, Office of Economic and Strategic Analysis, Office of the Assistant Secretary for Transportation Policy) (Selection Certificate). Other members of this Court have found that a "plaintiff may . . . establish a prima facie case of age discrimination by demonstrating that a substantial difference between the ages of two candidates exist." Ware v. Howard Univ., Inc.,

816 F.Supp. 737, 750 (D.D.C. 1993) (finding that a seventeen-year difference between the ages

of the selectee and the plaintiff is both substantial and sufficient to create an inference that age

was a factor in the defendant's decision not to promote the plaintiff); see also Beeck v. Fed.

Express Corp., 81 F. Supp. 2d 48, 54 (D.D.C. 2000) (holding that "to raise an inference that a

younger person was favored, a plaintiff must point to a worker with a 'significant' or

'substantial' difference in age.") (citations omitted). Moreover, the Supreme Court noted that

even if the plaintiff and the selectee fall within the age group protected by the ADEA, a prima

facie showing is usually established when a person significantly younger than the plaintiff was

selected. See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996) (finding that

the "fact that a [selectee] is substantially younger than the plaintiff is a far more reliable indicator

of age discrimination than is the fact that the plaintiff was replaced by someone outside the

protected class."). And, one current member of this Court recently stated that "[t]o be

'significant' or 'substantial,' the relevant age difference must be ten years or more," McNally v.

Norton, 498 F. Supp. 2d 167, 181 n.14 (D.D.C. 2007), which is consistent with the finding in

Miller v. Lyng that "notwithstanding the fact that the person who was promoted was also a

member of the (over 40-year old) protected class," the age difference between a 42 year old

selectee and a 54 year old non-selectee was sufficient to establish a prima facie case of

discrimination based on age.  660 F. Supp. 1375, 1377 (D.D.C. 1987); see, e.g., Richter v. Hook-

SupeRx, Inc., 142 F.3d 1024, 1028-29 (7th Cir.1998) (reiterating prior holding that ten year age

difference is "presumptively substantial"); Lovelace v. Sherwin-Williams Co., 681 F.2d 230,

243, n.13  (4th Cir.1982) (stating that "absolute and relative ages of the claimant and his

replacement have obvious relevance in assessing whether a factual inference of age

discrimination is permissible"); <u>Loeb v. Textron, Inc.</u>, 600 F.2d 1003, 1013, n.9 (1st Cir.1979) (stating that "[i]n an age case, the probative value of evidence as to the age of complainant's replacement obviously will depend on complainant's own age and the age difference. Replacement of a 60 year old by a 35 year old or even a 45 year old within the protected class would be more suggestive of discrimination than replacement of a 45 year old by a 42 year old within the protected class or by a 39 year old outside it"); <u>Mintzmyer v. Babbitt</u>, No. 93-0773, 1995 WL 25342, * 14 (D.D.C. Jan.12, 1995) (finding prima facie case not established where 56-year-old plaintiff replaced by 53-year-old), <u>aff'd</u> 72 F.3d 920, 1995 WL 761911 (D.C.Cir.1995); <u>Polstorff v. Fletcher</u>, 452 F.Supp. 17, 24 (N.D. Ala. 1978) (finding 62-year old could made out prima facie case even when selectee was 42-year old); <u>but</u> <u>see</u> <u>Endres v. Helms</u>, 617 F.Supp. 1260, 1266-1267 (D.D.C. 1985) (finding that 58-year old established prima facie case even though selectee was 56-years old because the plaintiff provided evidence of other factors which demonstrated age discrimination, including agency's intentional reorganization plan to force older workers to retire).  Moreover, the plaintiff's ability to make out a prima facie case of age discrimination is further undermined by the fact that other candidates selected for the best qualified list were 50, 54, 56 and 60 at the time of their selection, while the ages of the other two candidates on the list were unknown because they were not provided by the candidates when they submitted their applications.  Def.'s Mem, Ex. G1c, (Selection Certificate).

Even if the plaintiff could establish a prima facie case of discrimination based on her age, she has, nonetheless, failed to demonstrate that the plaintiff's proffered legitimate, nondiscriminatory reason for not selecting her was pretextual.  As noted above, the defendant asserts that her failure to select the plaintiff was because she "did not make the best qualified list

based on the review by the panel," Def.'s Mem. at 6, due to the panel members' conclusion that the plaintiff was minimally qualified for the position, Def.'s Mem., Ex. F3 (Bachner Aff.)  ¶4, Ex. F4 (Alston Aff.) ¶4, Ex. F5 (Carlton Aff.) ¶4.  As a result of not making the best qualified list, the plaintiff was not referred to the selecting officials for further consideration.  As previously noted, the plaintiff has not provided any evidence to support her allegations that she was discriminated against based on her age, nor has the plaintiff demonstrated that the defendant's legitimate, nondiscriminatory reason is a pretext for discrimination.  "It is not enough for the plaintiff to hope that the factfinder might simply disbelieve the reasons proffered by the defendant[.]" Skelton v. ACTION 668 F. Supp. 25, 29 (D.D.C. 1987).  So, even if the plaintiff could establish a prima facie case by, for example, showing significant age disparity between Mr.Wells and herself, she would still have "to put on some evidence, beyond the mere age differential between [her]self and the selectee, demonstrating that age played a role in the particular employment decision." Skelton, 668 F. Supp. at 29; Smith v. Chamber of Commerce, 645 F. Supp. 604, 609-10 & n.4 (D.D.C. 1986); Snyder v. Wash. Hosp. Ctr, Civ. Action No. 83-1790, 1984 WL 3244, **3-4  (D.D.C. 1984);  see also Cuddy v. Carmen, 762 F.2d 119, 123 (D.C. Cir. 1985).  Thus, "[w]hile a plaintiff need not put on direct evidence of discrimination, she must put on some evidence upon which a factfinder could reasonably find in [her] favor." Skelton, 668 F. Supp. at 29-30 (internal citations omitted). The plaintiff has failed in this regard, and accordingly has not raised a "genuine fact requiring a trial."  Id.  Accordingly, the defendant is entitled to summary judgment on the plaintiff's age discrimination claim.

**The Plaintiff's Disparate Impact Allegations**

The plaintiff also alleges disparate impact discrimination based on race, sex, and age. Compl. ¶1. Specifically, she asserts that "'[w]ithin the entire organization of the Office of the Secretary of the Transportation Department, there are disproportionate numbers of blacks in managerial positions and in the Senior Executive Service, as compared to whites,' id. ¶12, 'there are disproportionate numbers of women in managerial positions and in the Senior Executive Service, as compared to whites and males,' and 'there are disproportionate numbers of persons 55 years of age and older in managerial positions and in the Senior Executive Service as compared to younger ages,'" id. ¶19. In opposition, the defendant responds that the "[p]laintiff has no basis for any disparate impact claim" because she "cannot identify any specific practice or policy that causes any alleged disparate impact." Def.'s Mem. at 14. Further, the defendant contends that the "plaintiff has failed to provide any valid statistical analysis, that adequately assesses all the relevant variables, including a relevant analysis of the composition of the qualified applicant pools, in support of her [disparate impact] claim." Id. For the reasons set forth below, the Court must side with the defendant.[12]

---

[12] Although the Supreme Court recognizes that the ADEA authorizes recovery in disparate impact cases, "a plaintiff falls short by merely alleging a disparate impact [claim], 'or point[ing] to a generalized policy that leads to such an impact.'" Meacham v. Knolls Atomic Power Lab., __ U.S. ___, ___, 128 S. Ct. 2395, 2405 (2008) (quoting Smith v. City of Jackson, 544 U.S. 228, 241 (2005)). "Rather, the employee is 'responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.'" Smith, 544 U.S. at 241 (quoting Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 656 (1989)). Here, the plaintiff's disparate impact claim fails because she has not identified a specific test, requirement, or practice that has caused an adverse impact based on age. Further, the plaintiff has not presented any evidence of any statistical disparities that would support her disparate impact claim based on age. See Arnold v. U.S. Postal Serv., 863 F.2d 994, 996 (D.C. Cir. 1988) (holding that "[p]roof of discriminatory intent is not necessary to prevail on a disparate impact claim. The plaintiff must simply establish, generally through the use of statistical evidence, that the challenged practice has a disparate impact on the protected class."); Koger v. Reno, 98

(continued...)

When a claim of disparate impact discrimination is made, courts also employ a three-step burden-shifting analysis similar to the McDonnell Douglas framework.  Anderson v. Zubieta, 180 F.3d 329, 338-39 (D.C. Cir. 1999).  Thus, the plaintiff must first establish a prima facie case of discrimination.  Albemarle Paper Co. v. Moody, 422 U.S. 405, 425 (1975). The prima facie case "may be established by policies or practices that are neutral on their face and in intent but that nonetheless discriminate in effect against a particular group." Int'l Bhd. of Teamsters v. U.S., 431 U.S. 324, 349 (1977). If a prima facie case is established, the burden then shifts to the employer to "demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i); see Albemarle Paper Co., 422 U.S. at 425; Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971).  And finally, if an employer satisfies this burden, the plaintiff must show that an alternative employment practice could fulfill the employer's legitimate needs without a similar discriminatory effect. 42 U.S.C. § 2000e-2(k)(1)(A)(i); see also Albemarle Paper Co., 422 U.S. at 425.

Here, the plaintiff has not identified any specific practice or policy of the Department of Transportation that is neutral on its face and in intent but that is nonetheless discriminatory in effect against blacks, women, or older employees.  Further, the plaintiff has not alleged any facts in her submissions to the Court that raise a genuine issue of material fact as to her disparate impact claim.  Accordingly, the disparate impact component of all the plaintiff's claims must be granted.

---

[12](...continued)

F.3d 631, 639 (D.C. Cir.1996) (quoting  Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994,(1988)). ("[T]he plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions.").  Accordingly, the plaintiff's disparate impact claim must be dismissed and summary judgment on this claim in favor of the defendant must be granted.

**The Plaintiff's Retaliation Claim**

The plaintiff also alleges that her non-selection resulted from retaliatory animus.  Compl.

¶9.  Specifically, the plaintiff represents that she "was wrongfully discharged [by the

Department] on January 4, 1988[,] after making formal administrative complaints of

discrimination and retaliation and filing a civil action . . . ."  Id.  ¶7.  She seems to further assert

that the "[d]efendant [took the position that she] will never work in the federal service again and

actively took steps to blacklist [her] from obtaining employment in general and at the Department

of Transportation in particular, or at any other federal agency going forward and continuing." Id.

[13] As a result of this purported animus, the plaintiff opines that the "defendant never considered

[her] application for employment for the Senior Executive Position as Director of the Office of

Economic and Strategic Analysis." Id. ¶9. And the plaintiff surmises that the defendant knew

about her earlier protected activity at the time of her non-selection because the plaintiff had

allegedly worked closely with Under Secretary Jeffrey Shane at the Department from 1979 to

1987 and he was the approving officer for the position and cognizant of the plaintiff's

application.  Pl.'s Opp'n. ¶6. In opposition, the defendant responds that the plaintiff cannot

establish a prima facie case of retaliation because "[e]ach of the panel members, . . . has stated

that they were unaware of the [p]laintiff's prior EEO activity." Def.'s Mem. at 15.  In addition,

the defendant contends that the "plaintiff cannot establish the requisite casual connection because

her prior EEO activity took place nearly 20 years ago and the activity covers allegations going

back nearly a quarter of a century."  Def.'s Mem. at 16.

---

[13] The plaintiff also asserts that "[a]s a result of [the] defendant's deliberate and intentional
efforts to prevent [the] plaintiff from securing employment," id., she "has never had a permanent job with
a third party employer since she left the agency in 1988, despite applying for thousands of jobs," Pl.'s
Opp'n ¶4.

"Like claims of discrimination, claims of retaliation are also governed by the McDonnell Douglas burden-shifting scheme." Carney v. Am. Univ., 151 F.3d 1090, 1094 (D.C. Cir.1998) (citing McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir. 1984)). Accordingly, to establish a prima facie case of retaliation, the plaintiff must show that "(1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal connection existed between the two." Wiley v. Glassman, 511 F.3d 151, 155 (D.C. Cir. 2007).

Here, it is undisputed that the plaintiff can satisfy the first prong of a prima facie case for retaliation because she engaged in statutorily protected activity by initiating the earlier Title VII proceeding against the defendant.  Def.'s Mem. at 15 (acknowledging that the filing of the complaint constituted covered protected activity); Compl. ¶7 (asserting the filing of the earlier civil action).  As another member of the Court reiterated recently, "[a]n activity is 'protected' for the purpose of a retaliation claim 'if it involves opposing alleged discriminatory treatment by [an] employer or participating in legal efforts against the alleged treatment'."Lemmons, 431 F. Supp. 2d at 91 (quoting Coleman v. Potomac Elec. Power Co., 422 F. Supp. 2d 209, 212-13 (D.D.C. 2006). The plaintiff has also satisfied the second element of her prima facie case even though the record indicates that the panel members testified that they were unaware of the plaintiff's prior EEO activity and her non-selection was not based on such activity, Def.'s Mem., Ex. F2 (Gauthier Aff.) at ¶1, Ex. F3 (Bachner Aff.)  ¶¶1,5, Ex. F4 (Alston Aff.) ¶5, Ex. F5 (Carlton Aff.) ¶¶1,5, because her non-selection for the Director of the Office of Economic and Strategic Analysis position is a materially adverse action.  Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999) ("Materially adverse consequences affecting . . . [an employee's] future employment opportunities" can be considered adverse.); Youssef v. FBI, 541 F. Supp. 2d 121, 144 (D.D.C.

2008) (finding that the plaintiff's non-selection was considered an adverse employment action);

Walker v. Johnson, 501 F. Supp. 2d 156, 167-68 (D.D.C. 2007) (same); Gibson v. Wells Fargo

N.A., 460 F. Supp. 2d 15, 24 (D.D.C. 2006) (same); McIntyre v. Peters, 460 F. Supp. 2d 125,

134 (D.D.C. 2006) (same)

      Although the plaintiff has satisfied the first two prongs of a prima facie case of

retaliation, she has not demonstrated that there is a causal connection between her prior EEO

activity that occurred nearly 20 years ago and her non-selection for the position that is the subject

of this case.  To demonstrate a causal connection between the protected activity and the

challenged retaliatory act, the temporal proximity between the employer's knowledge of the

protected activity and the adverse personnel action must be "very close." Clark County Sch. Dist.

v. Breeden, 532 U.S. 268, 273-74 (2001) (citing caselaw to support position that a three or four-

month period between an adverse action and protected activity is "insufficient" to show a causal

connection, and holding that a 20-month period suggests "no causality at all").  Thus, even though

the plaintiff alleges that she worked closely with Under Secretary Shane, the selecting official for

the position in question, when she originally engaged in the 1987 EEO activity, the record does

not support a finding that the defendant's purported knowledge of that activity and her non-

selection had a causal connection.  Accordingly, the defendant's motion for summary judgment

on the plaintiff's retaliation claims must also be granted.

## IV.  CONCLUSION

For all of the foregoing reasons, the defendant's motion for summary judgment must be

**Granted**.[14]

**SO ORDERED** this 29th day of September, 2008.

_____/s/_____

REGGIE B. WALTON

United States District Judge

---

[14] An Order consistent with this memorandum opinion was issued on March 28, 2008.  The Order is now appealable.